Stephenson, J.
 

 Once again we are confronted with
 
 *197
 
 that legal monstrosity “wilful and malicious” misconduct.
 

 This is an action in replevin, brought under virtue of a repossession clause in a chattel mortgage in the words and figures following:
 

 “It is agreed that if default be made in the performance of any of .the agreements or conditions herein resting upon the mortgagor, or if the mortgagor shall commit any waste or misuse and not keep said property in first-class condition or shall attempt to sell, secrete, convert or remove said property without mortgagee’s written consent, or if the property shall be seized upon mesne or final process had against the mortgagor, or if a petition in bankruptcy be filed by or against or an application for a receiver be filed by or for, or a receiver be appointed for the mortgagor, then in either or all of such events, * * * or if the mortgagee shall at any time deem it necessary for the more perfect and complete security of his claim, then the mortgagee is hereby authorized and empowered to enter any premises of the mortgagor or other place where the property may be and take possession thereof without notice or demand or legal procedure, said notice and demand being hereby expressly waived *
 
 *
 

 Plaintiff was the owner of this chattel mortgage by assignment. It might well have taken the bus without legal process under this clause of the mortgage, but it resorted to the more orderly procedure by suing out a writ of replevin.
 

 Plaintiff made its election as to remedies and naturally must abide the consequences.
 

 As was said by the trial court there was not much for the plaintiff to prove. The court was right. The original contract was admitted, but defendant claimed that plaintiff had waived its right to demand payment in the amount of $180 per month and agreed to re
 
 *198
 
 ceive and did for seventeen months receive payments in the snm of $100 per month.
 

 He who asserts a waiver must prove it. The trial court so charged and, in so far as it went, that was correct. This court defined “waiver” in the case of
 
 List & Son Co.
 
 v.
 
 Chase,
 
 80 Ohio St., 42, 88 N. E., 120. While the definition was not carried into the syllabus, waiver was the basic issue in the case. Davis,. J., at page 49 said:
 

 “A waiver is a voluntary relinquishment of a known right. It may be made by express words or by conduct which renders impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform. Mere silence will not amount to waiver where one is not bound to speak.”
 

 Ofttimes it is difficult to discern from the pleadings whether the issue is waiver or estoppel, but inasmuch as the defendant has elected to treat the issue herein as waiver, we will so treat it.
 

 Courts move slowly and carefully when the claim is made that a party has waived the terms of a written contract and agreed to different terms by parole, as it in fact, if not in law, amounts to a modification of the original contract. This is particularly true in a case wherein it is claimed that the only waiver was the oral waiver of the right to receive payment in instalments, less in amount than that stipulated in the original written contract.
 

 When such waiver, if in fact there was a waiver, comes after a breach of the original contract by the party claiming the benefit of the waiver, it should receive not only careful but serious consideration at the hands of the courts, as such an arrangement is diametrically opposed to sound business principles.
 

 It was up to the defendant to assume and carry the burden of proving the waiver by the greater weight of the evidence, but in so doing he was required to
 
 *199
 
 prove a clear, unequivocal, decisive act of the party against whom the waiver was asserted, showing such a purpose or acts amounting to an estoppel on the latter’s part. 27 Ruling Case Law, 909 and 910, Section 5, and cases cited.
 

 The only vestige of testimony tending to show a waiver by plaintiff is that of Bertea, president and general manager of the defendant company, wherein he details a conversation with Harold 0. Hoffman, credit manager of plaintiff company, held at its office in Cleveland, Ohio, in April, 1932.
 

 Bertea was asked to detail this conversation. He gave it as follows:
 

 “Well I went to his office and I told Mr. Hoffman, I said ‘I can’t pay any more a hundred and eighty dollars.’ And Mr. Hoffman asked me why. I said business is kind a all going down and I can’t make any more hundred and eighty dollars. Well Mr. Hoffmán said ‘Well how much can you pay?’ I said ‘Mr. Hoffman I can pay from now on a hundred dollars.’ Then I had a blank check with me. He said ‘All right.’ Then I hand the blank check to Mr. Hoffman and Mr. Hoffman made it himself, the check, and I signed it.
 
 * * *
 
 ”
 

 Hoffman’s detail of this conversation is vastly different from that of Bertea. His statement is to the effect that the April check for $100 would be accepted, but different arrangements would have to be made for the May payment.
 

 No question has been raised as to the power and authority of Hoffman to waive for his company, so we assume that he had such power and authority. Bertea’s testimony as to an agreement to waive is neutralized by his subsequent correspondence wherein he is consistently begging for lenience in the matter of payments. If he had an agreement with plaintiff to the effect that it would receive monthly payments in
 
 *200
 
 the sum of $100, he could and undoubtedly would have stood flatly on such agreement; but he does not even refer to it in his letters.
 

 For the sake of the argument, let us assume that plaintiff did agree to accept $100 per month from Bertea. The record shows beyond all cavil that he breached this agreement, as he did not pay $100 per month. As much as fifty days elapsed between payments. Bertea breached the original contract and the modified contract, if it was modified. After all this, how much longer was the plaintiff required to wait before taking action to repossess the bus ?
 

 It is not necessary for this court to determine whether or not there was a waiver in this case. If there was a waiver, Bertea failed to comply with the modified contract in making payment, and plaintiff had a full and complete right to retake its bus and such retaking, although it was probably wilful, was not malicious; and no liability attaches when one wilfully takes that which under the law he had a right to take.
 

 If a party to a contract has a color of right to retake property sold on instalments for the further protection of his security, such taking is not malicious and it is error for the trial court to submit such an issue to the jury under .such circumstances, and the error is intensified when the court itself recognizes such issue in his general charge to the jury by instructing the jury on punitive damages.
 

 This finding is decisive of this case. There was nothing to send to the jury in this case and the trial court erred in so doing, and the Court of Appeals likewise erred in not reversing the Court of Common Pleas and rendering final judgment.
 

 The judgments of the Court of Appeals and Court
 
 *201
 
 of Common Pleas are reversed, and final judgment is rendered for plaintiff in error.
 

 Judgments reversed.
 

 Weygandt, C. J., Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.