OPINION
Defendant-appellant, Village of Batavia ("Batavia"), appeals a decision of the Clermont County Court of Common Pleas granting judgment in favor of Clermont County ("County"). The trial court found that Batavia had materially breached an agreement entered into between Batavia and the County for the provision of emergency water by taking county water on a permanent basis. The judgment of the trial court is affirmed.
In 1987, Batavia and the County entered into negotiations concerning the infrastructure of the County's water supply system and Batavia's water system. The County had a water main line north of Batavia and another main line just south of Batavia, which the County sought to connect by installing a twenty-four inch water main through Batavia. Batavia was suffering from severe problems with respect to its own municipal water facilities, and the Ohio Environmental Protection Agency was threatening to close Batavia's facilities due to extensive inadequacies.
On March 21, 1989, Batavia and the County entered into an agreement ("Agreement") whereby the County would provide emergency water services to Batavia in return for Batavia allowing the County to run a water main through the village. Both the County Commissioners and the Batavia Village Council ("Village Council") properly ratified the Agreement by adopting it in local resolutions. Pursuant to the Agreement, the County would install a twenty-four inch water main through Batavia, and Batavia would attach an eight-inch supply meter which would run to the Batavia facilities.
The opening recital states the purpose of the Agreement:
 [T]o authorize the construction of a water transmission main within the Village of Batavia and to authorize a connection into the water transmission main for the purpose of securing emergency back-up water supply for the Village of Batavia during periods of an emergency or disaster.
The Agreement continues, setting forth the specifics of the contract. Paragraph Two provides that Batavia "is authorized to connect into the water transmission main * * * for the express purpose of securing an emergency back-up water supply." Paragraph Four defines "emergency" and "disaster" to exclude "inadequate water supply of the Batavia Waterworks due to inadequate facilities and/or high seasonal demand." Paragraph Six provides that Batavia must secure County approval before using the County water for emergency purposes, unless Batavia is unable to contact County officials. Should Batavia improperly use the connection, it loses all right to use the water, and the County can remove the connection. Paragraph Nine is the provision disputed in the present appeal:
 County acknowledges that Village may desire to purchase water for resale from the County Waterworks System. Any system capacity charge imposed at that time shall be based upon the size of the master supply meter and the Village shall be treated as one entity rather than separate units for the purpose of imposing the system's capacity charge.
In June 1995, Batavia opened the eight-inch water meter connection to obtain a permanent water source, without any notice to or consent by the County. The County Waterworks was immediately aware of Batavia's action, but it did nothing to prevent the unauthorized use. The situation continued until February 10, 1997 when the Village Council sent a letter to the Clermont County Commissioners requesting that the Commissioners verify the system capacity charge[1] that Batavia was to pay. On March 12, 1997, the County Commission passed Resolution No. 37-97, which established a new class of water users, "Public Water Supplier" ("PWS"), and imposed a system capacity fee of $1.10 per gallon used, based upon the average gallons used by the PWS in a day.
On March 21, 1997, A. Steven Wharton, the Clermont County Administrator, sent a letter to the Village Council outlining the new PWS classification, stating that Batavia had been determined to be a PWS, and stating that the system capacity charge would be $247,000. Batavia refused to pay the fee, maintaining that the system capacity fee should be based on the size of its master water meter as stated in paragraph nine of the Agreement.
On June 19, 1997, David A. Spinney, Assistant Clermont County Administrator, sent to the Batavia Village Council a letter notifying Council that Batavia's unauthorized use of the County's water system violated the Agreement. Batavia responded on July 3, 1997, when Jim A. James, the Batavia Village Administrator, wrote a letter to the Clermont County Commission. James asserted that the system capacity fee was controlled by Paragraph Nine of the Agreement, which purports to base the fee on the size of the "master supply meter," not the amount of water used.
The Clermont County Commissioners filed suit against Batavia on September 4, 1997. The Commissioners sought a declaratory ruling on the effect of the Agreement and the $247,000 system capacity charge that Batavia refused to pay. Batavia responded raising numerous defenses, including allegations that the County Commissioners were estopped from asserting their claims because the County Commissioners waived the right to enforce Paragraph Six of the Agreement, and that Paragraph Nine of the Agreement controlled the fee to be charged.
The trial court found that the Agreement only authorized Batavia to use county water in the event of an emergency or disaster, and that Batavia had breached the Agreement by taking water on a permanent basis. The trial court further found that Batavia had been unjustly enriched by the use of county water, and that there was an implied contract between Batavia and the County for a permanent water supply. Accordingly, the trial court awarded the County $247,500 plus prejudgment interest. Batavia appeals, raising a single assignment of error:
 The trial court erred by failing to enforce the specific provision of paragraph 9 of the March 21, 1989, agreement.
Batavia contends that under paragraph nine of the Agreement, it is required only to pay a system capacity charge based on the size of its water meter. Batavia further concludes that this charge should be $139,535, based on the county's 1995 system capacity fee for a commercial user with an eight-inch meter, since the county had no other established fees for eight-inch meters at that time.
The trial court found that Batavia breached the Agreement by taking water from the county line on a permanent basis when the Agreement clearly contemplated that Batavia would only use the county water supply in the event of an emergency or natural disaster. The trial court determined that this was a material breach which discharged the county's obligations under the Agreement.
A breach of a portion of a contract does not discharge the obligations of the parties to the contract unless the breach is material. SoftwareClearing House v. Intrak, Inc. (1990), 66 Ohio App.3d 163, 170, citingKersh v. Montgomery Developmental Ctr. (1987), 35 Ohio App.3d 61; Boehlv. Maidens (1956), 102 Ohio App. 211 . A breach is material if performance or nonperformance of the disputed term is essential to the purpose of the agreement. Id. To determine whether a breach of a contract is material, a court is to consider the following five factors:
 the extent to which the injured party will be deprived of the expected benefit, the extent to which the injured party can be adequately compensated for the lost benefit, the extent to which the breaching party will suffer a forfeiture, the likelihood that the breaching party will cure its breach under the circumstances, and the extent to which the breaching party has acted with good faith and dealt fairly with the injured party.
Software Clearing House, 66 Ohio App.3d at 170-171, citing Kersh,35 Ohio App.3d at 62-63. A trial court's decision finding a material breach of a contract will not be reversed if it is supported by some competent, credible evidence. Software Clearing House, 66 Ohio App.3d at 170.
Applying the above factors to the present case, we find that the trial court's determination that Batavia materially breached the Agreement is supported by competent and credible evidence. The Agreement contemplated that Batavia would access the County's water supply only in the event of an emergency or disaster. However, contrary to the agreement, Batavia has accessed the County's water supply on a permanent basis since 1995. Batavia has received the benefit of the use of the County's water supply, while the County has not been paid the system capacity charge. The County has provided the infrastructure for Batavia to access the water supply, yet Batavia has failed to bear this cost as anticipated by the Agreement. This cost has been calculated, and the County can be adequately compensated through a monetary award.
Batavia has dismantled its own water facilities, making it unlikely that it will cease using the County as a permanent water source and remedy the breach. We also note Batavia's lack of good faith and fair dealing in this matter. Batavia did not notify the County that it intended to tap into the County water supply on a permanent basis, but instead began drawing water without regard to whether the County was able to supply it. Batavia then waited two years to inquire about establishing a permanent water supply and the associated system capacity charge.
As a result of Batavia's material breach of the Agreement, the County is relieved of its duties under the Agreement. Batavia is now barred from asserting that the County must be held to the terms of the Agreement relating to the system capacity charge. Because the trial court's decision is supported by competent and credible evidence, we find no error in its determination that paragraph nine of the Agreement is of no present effect.
Batavia further argues that its breach of the Agreement does not discharge the County's duties because the County acquiesced in the breach. Batavia contends that the County has waived the right to contest the terms of the Agreement, regardless of Batavia's action, because the County allowed Batavia to draw water on a permanent basis.
Waiver, as applied to contracts, is the voluntary relinquishment of known rights. White Co. v. Canton Transportation Co. (1936),131 Ohio St. 190, paragraph one of the syllabus; Cornett v. Fryman (Jan. 27, 1992), Warren App. No. CA91-04-031, unreported. A party may waive the terms of a written contract by words or conduct; however, "mere silence will not amount to waiver where one is not bound to speak." White at 198. Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right. Chubb v. Ohio Bur. Of Workers'Comp. (1998), 81 Ohio St.3d 275, 278.
The party asserting a waiver must prove a clear, unequivocal, decisive act by the party against whom the waiver is alleged, "showing such a purpose or acts amounting to an estoppel on the latter's part." White at 199. The party claiming waiver has the burden of establishing the facts in support of the claim. Id. at 198-199.
In the present case, there is little indication that the County, expressly, by conduct or via silence, waived the terms of the Agreement. Contrary to Batavia's argument, the fact that the County has not terminated water service to the village does not indicate that the County intended to waive its rights upon Batavia's breach. Instead, the testimony of the County's utilities supervisor indicates that the County did not want to create a public emergency within the village by cutting off its water supply. The fact that the County agrees that it is willing to provide a permanent water supply to Batavia likewise fails to indicate a waiver. The County's willingness to permanently supply Batavia with water hinges upon payment of an appropriate system capacity charge.
We find that the trial court's decision is supported by competent, credible evidence. Accordingly, the assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] System capacity charges, previously called tap fees, are one-time fees charged by the county to recover the funds necessary to build the infrastructure required to support the new user's demand on the system.