OPINION
Plaintiff-appellant, Dynaquest Corporation, doing business as Association of Certified Liquidators ("ACL") in Columbus, Ohio, entered into a written contract for the sale of goods with Chef'n Corporation ("Chef'n") located in Seattle, Washington, defendant-appellee, on August 25, 1999. The terms of the contract called for ACL to pay Chef'n for the goods in advance of shipment and ACL paid the full contract price by a check issued on September 8, 1999.
The contract between ACL and Chef'n is in the form of a purchase order which was printed, completed and signed by ACL and was accepted in writing by Chef'n. The contract called for Chef'n to sell ACL its stock of 12,882 units of Live Wire Action Sound Glove at a unit price of $1.50, for a contract price of $19,323. The body of the contract refers to two purchase order numbers. Purchase order number 1694 called for Chef'n to ship 10,578 units and specified "ship ASAP cancel if not shipped by 9-15-99." Purchase order number 4500-2401 called for Chef'n to ship 2,304 units and specified "ship 10-4-99. Cancel if don't ship by 10-20-99."
Where the preprinted contract has a space for "Ship Via" ACL wrote "will advise." Immediately below that line, ACL checked a box indicating that the goods were to be shipped "Freight: Collect"; in other words, ACL agreed that it was responsible for the shipping costs. Where the preprinted contract has a space for "Ship To" ACL wrote "will advise which warehouses."
On September 14, 1999, the day before the first shipment was to be canceled if it had not been shipped, ACL sent a fax to Chef'n titled "Routing of our Purchase Orders." The fax ACL sent states as follows, in pertinent part:
 Following is the ship to and routing instructions for the first shipment:
PO#: 1694
Ship to Address: Leon Koral Company
2050 E Devon Ave
Elk Grove Village, IL 60007
 Ship via: Pacer. Pacer will be calling Jay Ledbetter to arrange for pickup. Plan on pickup being on Friday 9/17/99.
Chef'n complied with these instructions and the goods were available for pickup on September 17, 1999, as ACL instructed. However, contrary to ACL's written representation contained in the fax, Pacer never called and the goods were never picked up. Chef'n states by affidavit that ACL attempted to cancel the contract on September 27, 1999, an assertion that ACL does not deny. ACL never provided Chef'n with shipping instructions on the second shipment called for in the contract.
The purchaser, ACL, brought a claim in the Franklin County Court of Common Pleas against Chef'n alleging breach of contract on the part of defendant for failure to ship the first order on September 15, 1999, claiming that failure constituted a breach of contract resulting in cancellation of the entire contract. Plaintiff sought recovery of the $19,323, which had been paid to defendant.
Chef'n filed a counterclaim, seeking not only to retain the purchase price but also to recover costs incurred for storage of the goods which were shipped but not picked up by plaintiff.
Both parties filed motions for summary judgment. The motions for summary judgment raised no genuine issues of material fact as both parties agreed to the terms of the contract, the sending and receiving of the fax setting forth a delivery place and pickup date, and the fact that the first purchase order materials were available for pickup at the place and time specified in fax which, according to the written purchase order, was to be provided by plaintiff.
The trial court granted judgment for defendant, finding that Chef'n was entitled to retain the contract price, which had been paid by plaintiff, and that Chef'n was entitled to recovery of its storage costs of $1,200 per month since September 19, 1999 to the time of judgment of March 6, 2001. The trial court also found that ACL is entitled to immediate possession of the goods upon performance of its contractual obligations within thirty days of the day of judgment. In other words, ACL would have an obligation to pay the storage costs and then ACL would be entitled to possession of the entire amount of goods that were involved in the contract.
Plaintiff appeals, asserting the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RULING IN FAVOR OF CHEF'N BECAUSE THERE WAS ABSOLUTELY NO EVIDENCE THAT THE CANCELLATION PROVISION IN THE CONTRACT WAS NEGOTIATED OUT OF EXISTENCE OR WAIVED BY ACL.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RULING IN FAVOR OF CHEF'N BECAUSE THE UNDISPUTED FACTS ESTABLISH THAT THE CONTRACT WAS CANCELLED BY ITS TERMS.
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING CHEF'N STORAGE COSTS BECAUSE CHEF'N FAILED TO DISCHARGE ITS BURDEN OF PROVING SUCH CHARGES WERE COMMERCIALLY REASONABLE.
The first two assignments of error are combined for discussion as they are interrelated.
According to the purchase order, ACL had the obligation of paying for the goods before shipment was made. Payment in full was made on September 8, 1999. ACL also had the duty to provide instructions to Chef'n as to the place of shipment. Chef'n is located in Seattle, Washington, and ACL, on September 14, 1999, provided an address by fax of a warehouse in Illinois where shipment was to be made. In the fax, ACL also stated that pickup would be September 17, 1999. While cancellation for failure of shipment of the first purchase order was specified to be September 15, 1999, Chef'n could not ship the goods until provided further instructions by ACL. Given the distance of shipment and the fact that the goods took up forty-eight pallets as indicated by the affidavit of Mary Chong in regard to storage by Golden Glove Transport, it would appear that the shipping method would either have to be by semi-trailer or rail. It would appear that, due to the late notification of ACL, the goods could not be received at the storage area on September 15, 1999. In any event, the contract specified shipment rather than receipt. In its fax giving directions for shipment, ACL specified a pickup date of September 17, 1999, which appeared to be reasonable. However, there was no attempt to pick up the materials and, on September 27, 1999, ACL attempted to cancel the order.
The primary issue contained in the first two assignments of error is whether Chef'n made shipment in accordance with the contract that would avoid cancellation. ACL attempts to avoid any responsibility on its part by claiming that the contract was cancelled due to the provision that shipment was to be made by September 15, 1999, even though the place of shipment and the time for pickup by ACL was specified by it. ACL argues that its fax did not address nor change the cancellation date and that the contract lapsed according to its terms.
We disagree with that argument and agree with the trial court's analysis. The fax of September 14, 1999 was a necessary supplement by ACL to the contract in order to perform its obligations under the contract. It was not an amendment of the cancellation date, but ACL is estopped from asserting a cancellation date caused by its own failure to give timely notice of the place of shipment in order to meet a September 15, 1999 deadline. ACL furthermore, in recognition of its late notice, specified a more reasonable time for pickup of September 17, 1999, and Chef'n lived up to its obligations by making prompt shipment. Although there is no indication that ACL gave the late notice and the September 17 time of pickup in order to deliberately provide a means of avoiding the contract by claiming that shipment was to be made on September 15, 1999, or they could invoke the cancellation provisions, ACL cannot take advantage of its own action in providing the place of shipment and pickup, which is a date later than the September 15, 1999 date (two days), to gain a result that would be highly unfair and unreasonable to Chef'n.
The fax supplements the purchase order contract drafted by ACL which provided that ACL supplement it by providing the place and method of delivery. Obviously, ACL could not have provided notice of place of delivery on September 16, 1999, and take advantage of failure to ship by September 15, 1999, as the defect would solely have been due to their own action. Thus, the September 17, 1999 date of receipt at the Illinois warehouse was fully within the terms of the contract as supplemented by the fax sent and received on September 14, 1999.
There is an obligation in every contract for the sale of goods of good faith in its performance or enforcements. R.C. 1301.09. "`Good faith' means honesty in fact in the conduct or transaction concerned." R.C.1301.01(S). The express terms of the purchase order contract provided that ACL would "advise" on the shipping location and method of transportation and that ACL would pay for the freight costs. ACL "advised" that it would pick up the goods on September 17, 1999, and Chef'n was entitled to rely on that representation. Chef'n was required, based on the information provided on Septem-ber 14, 1999, to have the materials at the warehouse in Illinois on September 17, 1999, if that time of delivery was commercially reasonable. Apparently, it was commercially reasonable as the goods arrived thereon that day.
Technically, the action of ACL in giving the late notice of place of shipment and the time that ACL expected to pick up the materials constituted a waiver of the September 15, 1999 cancellation date to the extent that it was not commercially reasonable. The late sending of the fax constituted a decisive affirmative action which manifested the intent to waive the date of cancellation specified in the purchase order. In The White Co. v. The Canton Transportation Co. (1936), 131 Ohio St. 190, the Supreme Court held that one who asserts a waiver must prove it by showing a clear, unequivocal and decisive act of the party against whom the waiver is asserted, showing such a purpose or acts that amounted to an estoppel on its part. As we have previously noted, the late sending of the shipment location with the time of pickup to be as soon as the materials could be received, amounted to an act which clearly indicated to Chef'n that the September 15, 1999 cancellation date had been waived by ACL, at least to the extent that the goods be in Illinois at the specified warehouse on September 17, 1999.
ACL sent no instructions concerning the second shipment and Chef'n has had no opportunity to ship those materials to ACL. Thus, Chef'n is also entitled to retain payment of the amount involved in the second purchase order.
Appellant's first and second assignments of error are overruled.
Appellant finally contends that the trial court erred by awarding Chef'n storage costs because Chef'n failed to discharge its burden of proving that the charges were commercially reasonable.
In the affidavit of Mary Chong, office manager of Chef'n, she affirmed, based on personal knowledge, that the invoices of Golden Globe Transport for storage of the goods shipped to Illinois were true and accurate, the invoices were made part of her affidavit, and the invoices showed that an amount of $1,200 a month was billed by Golden Globe Transport to Chef'n for storage of forty-eight pallets of goods at $25 each.
It is sufficient that Chef'n show that it was billed by a storage company for $1,200 a month for storage of the materials, which were shipped to a warehouse specified by ACL and held by the warehouse for pickup by ACL. Payment of the storage charges were necessary in order to protect the goods which had been shipped to the warehouse. R.C. 1302.84
provides a remedy for sellers who suffer incidental damages as a result of failure by the buyer to satisfy its duty of acceptance:
 Incidental damages to an aggrieved seller include any commercially reasonable charges * * * incurred in * * * the * * * care, and custody of goods after the buyer's breach * * *.
ACL's failure to accept the goods when tendered constituted a breach of contract which placed a burden upon Chef'n to deal with the warehouse that had received the products which it shipped in order to safeguard the goods. Chef'n provided admissible evidence of its actual cost of storage due the receiving warehouse. ACL failed to provide any evidence that the storage costs were not commercially reasonable, or that there was a genuine issue of fact with regard to the need for storage or the cost of storage. Chong's affidavit, affirming the cost incurred for storage by an independent warehouse, must be accepted leaving no genuine issue of fact in the absence of evidence to the contrary, none of which was submitted by plaintiff. Once defendant submitted Chong's affidavit and the invoices, the burden was on plaintiff under Civ.R. 56(C) to submit admissible contrary evidence.
Appellant's third assignment of error is overruled.
Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE and LAZARUS, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.