The MONREAL FUNERAL HOME, INC., Appellant,

v.

OHIO FARMERS INSURANCE COMPANY, Appellee.

[Cite as *Monreal Funeral Home, Inc. v. Farmers
Ins. Co.*, 189 Ohio App.3d 1, 2010-Ohio-3805.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Decided Aug. 13, 2010.

2 

———————

Nicola, Gudbranson & Cooper, L.L.C., Timothy L. McGarry, and Michael E. Cicero, for appellant.

McDonald Hopkins L.L.C., Jerome W. Cook, and Erin K. Walsh, for appellee.

MARY JANE TRAPP, Presiding Judge.

{¶ 1} The Monreal Funeral Home, Inc. ("Monreal") appeals from a judgment of the Lake County Court of Common Pleas granting a directed verdict in favor of Ohio Farmers Insurance Company ("Ohio Farmers"). The case arose from disputes between Monreal and Olympic Building Company ("Olympic") regarding the construction of a funeral home. Monreal filed a complaint against Ohio Farmers to recover under the performance bond that it issued for this construction project. The trial court found that Monreal's claim under the bond is time-barred. We agree and therefore affirm.

{¶ 2} *Substantive Facts and Procedural History*

{¶ 3} In 2002, Monreal contracted with Olympic to build a funeral home for Monreal in Eastlake, Ohio, for the amount of $1,450,000. From the beginning, various disputes arose between Olympic and Monreal concerning the progress, scope, quality, and cost of the construction. Some of the problems allegedly arose from deficiencies in the plans and specifications prepared by Monreal's architect.

{¶ 4} Central to this case is a performance bond issued by Ohio Farmers. The contract between Monreal and Olympic required Olympic to obtain a performance bond for $350,000 naming Monreal as the primary obligee.[1] In July 2002, a performance bond was issued by Ohio Farmers as surety to insure Olympic's performance under the contract. A limitation-of-action clause in the bond states that "[a]ny suit under this bond must be instituted before the expiration of two (2) years from the date which Contractor ceases work on the Contract."

{¶ 5} By December 2002, Olympic had begun to submit various change-order requests to Monreal due to the alleged deficiencies in the plans. In February 2003, Monreal issued a "punch list," which was disputed by Olympic. By May 2003, Olympic's subcontractors were seeking assurances for payment from Monreal.

{¶ 6} On July 23, 2003, Monreal notified Olympic of its decision to declare Olympic in default. After negotiations, Monreal rescinded its declaration of default. However, the problems continued, and in March 2004, Olympic stopped work on the funeral home. On March 26, 2004, Monreal notified Olympic of Monreal's termination of Olympic for cause effective April 5, 2004. It is undisputed that Olympic performed no work after April 5, 2004.

---

1. Great Lakes Bank, the bank that financed the construction project, was named as the secondary obligee in the bond.

{¶ 7} On April 9, 2004, Monreal notified Ohio Farmers that it was making a claim under the performance bond. In a letter dated June 29, 2004, Ohio Farmers rejected the claim. Ohio Farmers stated that its obligations under the bond had "not arisen" for several reasons: (1) it believed Monreal's failure to pay Olympic for changes and to timely replace the architect constituted a breach of contract; (2) Olympic disputed the termination declared by Monreal and had offered to complete the undisputed contract items and also requested mediation, and, if necessary, arbitration of any dispute between Monreal and Olympic;[2] (3) Olympic claimed additional change orders and disputed many "back charges" claimed by Monreal; (4) the project had been substantially completed except for Monreal and Olympic's disagreement as to the appropriate remedies for the "punch list" items; (5) Olympic was prepared to complete the undisputed scope of the project and objected to owner completion; and (6) Monreal did not have standing to bring a claim because Great Lakes Bank, the bank that financed the construction project, was the "owner" named in the bond.

{¶ 8} After citing these reasons for its rejection of the claim, Ohio Farmers stated: "For the above reasons, [Ohio Farmers] believes [Ohio Farmers'] obligations under the bond have not arisen. In any case, given the disputes regarding the scope of completion, including the lack of definition of certain fixes, [Ohio Farmers] is unable to obtain bids for completion. Also, the Monreals and Olympic have agreed to arbitrate their disputes. It would not be appropriate for [Ohio Farmers] to act as an arbitrator by resolving on its own the scope of completion and the other disputes between the Monreals and Olympic. [Ohio Farmers] therefore intends to not complete the project. It appears, however, that the balance of the contract price as quantified by the CSL Consulting LLC is sufficient to cover the reasonable cost to complete the undisputed punch list items." Ohio Farmers ended the letter by stating that it continued "to reserve any and all rights of the surety and the principal."

{¶ 9} After Monreal and Olympic failed to resolve their dispute through mediation, Olympic filed a demand for arbitration with the American Arbitration Association on May 17, 2005, seeking $239,199 in damages. Olympic claimed that Monreal breached the contract and its warranty regarding the accuracy, completeness, and suitability of the construction plans and specifications. The arbitration, however, was considerably delayed by Olympic's noncompliance with

---

2. Section 4.6.1 of the General Conditions part of the contract between Monreal and Olympic states, "Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect * * * shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation * * *."

various orders by the arbitrator. Olympic and its president, Paul Globokar, failed to participate in discovery.

{¶ 10} On June 9, 2005, Monreal notified Ohio Farmers of the pending arbitration and "invited" Ohio Farmers to participate in the arbitration. Ohio Farmers declined.

{¶ 11} The arbitration process did not go well due to Olympic's lack of cooperation. An arbitration hearing was finally scheduled for April 4, 2006. Olympic did not appear at the hearing.[3] Based on the exhibits submitted by Monreal, the arbitrator found that Monreal owed Olympic a balance of $26,228[4] but the amount of funds needed to complete the project was $255,152. Therefore, the arbitrator found Monreal entitled to $228,924.00 from Olympic. However, the arbitrator limited the award to only $75,000, the amount Monreal sought in its counterclaim.

{¶ 12} On April 27, 2006, Monreal notified Ohio Farmers of the arbitration award and requested compensation under the bond. On June 19, 2006, Ohio Farmers notified Monreal that it would not pay the claim. It cited the expiration of the two-year limitation period for suit under the bond, which contained no arbitration provision, and also noted a lack of notice to Ohio Farmers that the arbitration had proceeded on a default basis.

{¶ 13} On June 29, 2006, Monreal filed the instant action against Ohio Farmers alleging three causes of action: breach of contract (count one), bad-faith breach of contract (count two), and declaratory judgment (count three).[5] Ohio Farmers raised the affirmative defense that the complaint was time-barred by the bond's two-year limitation-of-action clause.

{¶ 14} In the lengthy and protracted litigation that ensued, the parties' attention focused on the June 29, 2004 letter from Ohio Farmers to Monreal. Monreal claimed that this letter constituted a waiver of the two-year time

---

3. The night before the arbitration, Paul Globokar, president of Olympic, informed the arbitrator by an e-mail that he had filed for bankruptcy and requested a continuance of the arbitration. The arbitrator was able to determine that the filing was for personal bankruptcy and decided that the hearing would go forward as scheduled without Olympic's participation.

4. This amount was derived from reducing the amount already paid directly to Olympic and/or on Olympic's behalf ($1,512,172) from the base contract price and adding approved change orders totaling $1,538,400.

5. Ohio Farmers subsequently filed a third-party complaint against VIP Electric Company, a subcontractor that had agreed to indemnify Ohio Farmers, and its principals, Ellie and Kevin Vayo, as well as Olympic. VIP also filed a separate suit against Monreal, which was consolidated with the instant suit. VIP is not a party in the appeal before us, and the claims surrounding VIP are not at issue here.

limitation and also that it had relied on the letter to its detriment. It also claimed that the limitation clause was unreasonable.

{¶ 15} Monreal filed a motion for summary judgment, seeking a ruling that Ohio Farmers was obligated under the bond as a matter of law based upon the arbitration award. It also sought a ruling that Ohio Farmers' refusal to pay its claim constituted bad faith as a matter of law. Ohio Farmers also moved for summary judgment, based on the limitation-of-action clause in the bond.

{¶ 16} The trial court denied both motions. It determined that there were genuine issues of material fact to be resolved by the trier of fact regarding whether the limitation period was reasonable and whether Ohio Farmers had waived the time limitation through its statements and conduct.

{¶ 17} A jury trial was held on June 30, 2009. Monreal called as witnesses James Walker, bond counsel for Ohio Farmers, and William Monreal and Jane Monreal, owners of the Monreal Funeral Home.[6] Monreal attempted to show that Ohio Farmers had waived the limitation clause in the June 29, 2004 letter. At the conclusion of the plaintiff's case, Ohio Farmers moved for and was granted a directed verdict based on the two-year limitation provision in the bond. In its judgment entry, the court stated:

{¶ 18} "The Letter contained the following statements: 'For the above reasons, [Ohio Farmers] believes that its obligation under [the Bond] have not arisen.' The Court, when reading such provision and construing it most strongly in favor of Monreal, does not believe that there was a clear, unequivocal and decisive act by Ohio Farmers, nor does the Letter express an intent to waive its right to enforce the limitation of action clause. The Court finds this finding to be particularly true when such statement is read in conjunction with the additional statement in the Letter: '[Ohio Farmers] continues to reserve any and all rights of the surety and principal.' Ohio Farmers' statements in the Letter cannot be construed to suggest that Ohio Farmers intended to waive its rights under the Bond, particularly when the Letter so clearly states that Ohio Farmers is reserving any and all rights of the surety and principal."

{¶ 19} Monreal now appeals from the court's judgment directing a verdict in favor of Ohio Farmers, raising two assignments of error for our review:

---

**6.** Ohio Farmers attempted to call Monreal's counsel, Tim McGarry and Michael Cicero, as witnesses, to show that Monreal did not rely on Ohio Farmers but instead relied on its own attorneys regarding the time to file suit. Ohio Farmers argued that these two attorneys were necessary and material witnesses, because they had communicated directly with Ohio Farmers regarding Monreal's claim under the bond and because they were responsible for failing to file the suit timely. Monreal moved the court to quash the subpoenas, claiming attorney-client privilege, and the court granted the motion.

{¶ 20} "[1.] The trial court incorrectly denied Monreal's Motion for Summary Judgment as Ohio Farmers' private contractual limitation clause is unreasonable as a matter of law.

{¶ 21} "[2.] The trial court incorrectly granted a directed verdict against Monreal."

{¶ 22} Monreal's first assignment of error refers to the trial court's denial of its motion for summary judgment as to the issue of Ohio Farmers' liability based on the arbitration award and bad faith. A review of Monreal's notice of appeal reflects that Monreal appealed only the court's judgment granting Ohio Farmers' motion for directed verdict. App.R. 3(D) requires that a notice of appeal "shall designate the judgment, order or part thereof appealed from." Therefore, we summarily overrule this assignment of error. In any event, the issue that Monreal raises under this assignment of error in its brief—whether the contractual time limitation is unreasonable as a matter of law—is also raised under the second assignment of error and will be addressed in our analysis of the second assignment of error.

{¶ 23} "Pursuant to Civ.R. 50(A)(4), '[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.' " *Bliss v. Chandler,* 11th Dist. No. 2006–G–2742, 2007-Ohio-6161, 2007 WL 4098784, ¶ 46. " 'Because a motion for a directed verdict presents a question of law, an appellate court must conduct a de novo review of the trial court's judgment.' " Id. at ¶ 48.

{¶ 24} In its second assignment of error, Monreal presents two issues for our review: whether the two-year contractual limitation was unreasonable as a matter of law and whether Ohio Farmers waived the time limitation. Because the validity of its argument that the time limitation was unreasonable hinges on our analysis of the waiver issue, we address the waiver issue first.

{¶ 25} *Whether the Contractual Two–Year Limitation-of-Action Clause Was Waived*

{¶ 26} Regarding the waiver of a contractual term, the long-established rule is that "[i]t [is] up to the defendant to assume and carry the burden of proving the waiver by the greater weight of the evidence, but in so doing he [is] required to prove a clear, unequivocal, decisive act of the party against whom the waiver [is] asserted * * *." *White Co. v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 198–199, 5 O.O. 548, 2 N.E.2d 501. See also *Automated Solutions Corp. v.*

*Paragon Data Sys.*, 167 Ohio App.3d 685, 2006-Ohio-3492, 856 N.E.2d 1008, ¶ 28; *Cincinnati Gas & Electric v. Land* (March 16, 1992), 12th Dist. No. CA91–06–111, 1992 WL 50027.

{¶ 27} It is undisputed that Monreal officially terminated Olympic effective April 5, 2004, after which date Olympic performed no work on the funeral home. Therefore, pursuant to the clear and unambiguous language of the bond, the two-year limitation period was triggered on that date. Monreal, however, argues that Ohio Farmers waived the time period, pointing to the June 29, 2004 letter as its sole evidence.

{¶ 28} Our reading of the June 29, 2004 letter results in the same conclusion as that of the trial court. Ohio Farmers cited many reasons for its rejection of the claim, including its belief that Monreal had breached the contract by failing to pay Olympic for change orders and to timely replace the architect; that Olympic had offered to complete the undisputed contract items and to arbitrate any dispute, if necessary; and that the "owner" named in the bond, Great Lakes Bank, was the party with standing to make a claim.

{¶ 29} Read in the context of the entire letter, Ohio Farmers' statement that its obligations under the bond "have not arisen" was nothing more than a rejection of the claim. Although the use of the negative form of the present perfect tense of the verb "arise" may imply a possibility of a future occurrence, we, like the trial court, have difficulties construing the sentence "[Ohio Farmers'] obligations under the bond have not arisen" as a clear, unequivocal, and decisive waiver of the contractual time limitation. The fact that Olympic and Monreal would be mediating and arbitrating their disputes is but one of the many reasons that Ohio Farmers denied Monreal's claim under the bond. Considered in the context of the entire letter, the phrase "have not arisen" and the passing reference to a potential resolution by mediation and/or arbitration do not rise to the level of a formal waiver of the limitation-of-action clause. Monreal's and/or its counsel's interpretation of the letter as a waiver is not reasonable, particularly in light of Ohio Farmers' express reservation of any and all rights of the surety and principal of the bond at the end of the letter. Monreal, represented by counsel throughout the instant bond dispute with Ohio Farmers, could have entered into an agreement with Ohio Farmers to waive or toll the time period pending arbitration, but the record fails to reveal any discussion whatsoever of the limitation period during the almost 24 months between April 29, 2004, the date of Ohio Farmers' rejection of Monreal's claim, and April 5, 2006, the date by which suit was to be brought.

{¶ 30} Moreover, we recognize that in appropriate circumstances, a waiver may occur "when the insurer, by its acts or declarations, evidences a

recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 431, 21 O.O.3d 267, 424 N.E.2d 311. Here, however, Ohio Farmers steadfastly denied liability and never offered settlement, and therefore it cannot be said that it led Monreal to a delay in bringing suit under the bond.

{¶ 31} *Whether the Limitation Period Was Reasonable*

■ {¶ 32} Regarding the issue of the reasonableness of the contractual limitation-of-action clause, Monreal argues that a period of two years was unreasonable because the time period to bring Monreal's claim expired before it ever arose, pointing to the fact that the arbitration award did not occur until April 19, 2006, days after the time to bring suit had expired.

■ {¶ 33} Generally, the statute of limitations for a claim upon a written contract is 15 years. However, the parties to a contract may agree to limit the time for bringing an action to a period less than provided by relevant statute of limitations so long as that period is reasonable. *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 632, 635 N.E.2d 357. A two-year limitation period in an insurance policy has been held to be reasonable. See *Miller v. Progressive Cas. Ins. Co.* (1994), 69 Ohio St.3d 619, 624–625, 635 N.E.2d 317. In *R.E. Holland Excavating v. Bd. of Cty. Commrs.* (1999), 133 Ohio App.3d 837, 729 N.E.2d 1255, the court held that a 60–day limitation provided in a construction contract for filing suit to dispute the engineer's decision was not unreasonable.

{¶ 34} Monreal's assertion that "the time period to bring Monreal's claim expired before it ever arose" is based on its contention that Ohio Farmers in its June 29, 2004 letter *required* Monreal to complete the arbitration process before filing a claim. This is a misrepresentation of the letter. Ohio Farmers, in denying the claim, made reference to Olympic's willingness to mediate and arbitrate its dispute with Monreal as called for by the construction contract. The reference merely reflects an *awareness* by Ohio Farmers of the possibility of a resolution of the parties' dispute by mediation and/or resolution. Nowhere in the letter did Ohio Farmers require arbitration as a condition precedent to filing suit.

{¶ 35} The bond issued in this case is a performance bond, not a bond to insure Monreal against all damages under the construction contract. Under the terms of the bond, the claim arises when "the Contractor ceases work on the Contract," not when an arbitrator renders a decision on the dispute. The limitation-period clock began to run upon the contractor's cessation of work. Monreal's contention that the time period to bring its claims expired before it ever arose is without merit.

{¶ 36} In the absence of a clear, unequivocal, and decisive act of waiver, the obligee of a performance bond is bound by the bond's limitation-of-action clause despite the contractual requirement for arbitration between the obligee and the principal of the bond. A mere awareness of the arbitration process by the bond issuer does not constitute a waiver of the limitation-of-action clause. As no clear waiver is evidenced under the circumstances of this case, the trial court properly granted directed verdict in favor of the bond issuer.

{¶ 37} The judgment of the Lake County Court of Common Pleas is affirmed.

Judgment affirmed.

RICE, J., concurs.

GRENDELL, J., dissents.

DIANE V. GRENDELL, Judge, dissenting.

{¶ 38} I respectfully dissent from the majority's holding.

{¶ 39} The trial court decided the issue of whether Ohio Farmers Insurance Company waived its right to enforce the two-year limitation-of-action clause contained in the performance bond on a motion for directed verdict. The standard for granting a directed verdict is, "[i]n essence," the same as the standard for granting summary judgment: " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 91, 31 OBR 250, 509 N.E.2d 399, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202. Cf. Civ.R. 54(A)(4) (a motion for directed verdict shall be granted where "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party").

{¶ 40} The issue of whether a limitation-of-action provision has been waived by the insurer is a factual issue to be decided by the jury. *Rak v. Safeco Ins. Co. of Am.*, 8th Dist. No. 84318, 2004-Ohio-6284, 2004 WL 2676740, at ¶ 32; *Walls v. Kemper Ins. Cos.*, 10th Dist. Nos. 81AP–201 and 81AP–290, 1981 WL 3580, *3, 1981 Ohio App. LEXIS 12134, at *10–*11.

{¶ 41} The Ohio Supreme Court stated the basic rule regarding the waiver of a limitation-of-action provision as follows: "An insurance company may be held to have waived a limitation of action clause in a fire insurance policy by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion

the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired." *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311, at syllabus.

{¶ 42} Since *Hounshell,* "Ohio appellate courts have found that reasonable minds could differ as to whether the insurance company waived the one-year contractual limitations period by not officially denying the claim or by leading the insured to believe that the claim was still viable after the contractual limitations period had expired." *Am. Family Ins. Co. v. Taylor,* 5th Dist. No. CT2010–0014, 2010-Ohio-2756, 2010 WL 2414091, at ¶ 43.

{¶ 43} In the present case, there is no evidence that Ohio Farmers specifically denied liability under the bond. Monreal Funeral Home notified Ohio Farmers of its claim in April 2004. In June 2004, Ohio Farmers advised Monreal Funeral Home that it believed its "obligations under the bond have not arisen" and noted "a number of disputes or issues relative to the referenced contract and bond." These included disagreements about the scope of the punch list and scope of completion and the principal's (Olympic Building Company's) willingness "to complete undisputed contract items." Ohio Farmers stated that it believed "Olympic [would] object to any owner completion as Olympic is prepared to complete the undisputed scope of completion." Moreover, "given the disputes regarding the scope of completion, * * * [Ohio Farmers] is unable to obtain bids for completion." Finally, Ohio Farmers observed that "the Monreals and Olympic have agreed to arbitrate their disputes." Thus, "[i]t would not be appropriate for [Ohio Farmers] to act as arbitrator by resolving on its own the scope of completion and the other disputes between the Monreals and Olympic."

{¶ 44} It is completely reasonable to construe this letter as notification that Monreal Funeral Home's claim was premature, rather than denied. Ohio Farmers did not wish to pay on a bond where the principal was willing to complete the work and where there were disputes regarding the work to be completed. Given these uncertainties, Ohio Farmers suggested that it was not even possible to obtain bids to finish the work. Finally, and sensibly, Ohio Farmers was reluctant to pay a claim that could not be determined until the arbitration process had determined the liabilities. It is difficult to imagine how Monreal Funeral Home could have brought suit against Ohio Farmers at this time when all the determinative issues, i.e., damages and liability, were currently the subject of arbitration.

{¶ 45} The trial court and the majority misconstrue the law of waiver by imposing a heightened standard of proof on Monreal Funeral Home. As the basis for its decision, the majority agrees with the trial court that the June 2004 letter did not evince "a clear, unequivocal and decisive waiver of the contractual time limitation." Simply stated, this is not the law of Ohio with respect to the waiver of contract limitations.

{¶ 46} The standard applied by the lower court and majority derives from the decision of *White Co. v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 5 O.O. 548, 2 N.E.2d 501. Therein, the Ohio Supreme Court held: "He who affirms a waiver must prove it, and in so doing he must prove a clear, unequivocal, decisive act of the party against whom the waiver is asserted, showing such a purpose or acts amounting to an estoppel on his part." Id. at paragraph four of the syllabus. *White Co.*, however, is readily distinguishable from the line of cases deriving from *Hounshell.* At issue in *White Co.* was the "the claim * * * that a party has waived the terms of a written contract and agreed to different terms by parole." Id. at 198. The "waiver" at issue, "in fact, if not in law, amount[ed] to a modification of the original contract." Moreover, the purported waiver occurred "after a breach of the original contract by the party claiming the benefit of the waiver." Accordingly, the Supreme Court held that "it [the purported waiver] should receive not only careful but serious consideration at the hands of the courts, as such an arrangement is diametrically opposed to sound business principles." Id.

{¶ 47} The sort of waiver at issue in *Hounshell,* as in the case before us, involves a limitation-of-action provision. Thus, there are different considerations that demand a lesser burden of proof. In *Hounshell,* the Supreme Court recognized that " '[b]y definition, contractual limitations are in derogation of the time period fixed by the legislature for bringing such actions.' " *Hounshell,* 67 Ohio St.2d at 431, 21 O.O.3d 267, 424 N.E.2d 311. "While courts are diligent to protect insurance companies from fraudulent claims and to enforce all regulations necessary to their protection, it must not be forgotten that the primary function of insurance is to insure. When claims are honestly made, care should be taken to prevent technical forfeitures such as would ensue from an unreasonable enforcement of a rule of procedure unrelated to the merits." Id.

{¶ 48} In *Hounshell,* the Supreme Court was asked to adopt a rule similar to that in *White Co.,* i.e., "that the law of waiver, if applied, should only apply where it is found that the insurance company, by its overt acts, misled the insured into forbearing suit until after the limitation period had expired." Id.

{¶ 49} The Supreme Court rejected this standard as "too narrow an interpretation of the law of waiver to be applied to this type of case." Id. Rather, the court held that a waiver "in these types of cases" may occur when the insurer, by its acts or declarations, has led the insured to delay bringing an action on the insurance contract in the reasonable expectation that the claim would be paid. Id.

{¶ 50} In the present case, Ohio Farmers advised Monreal Funeral Home that its obligations under the bond "have not arisen" based on various outstanding issues between Monreal and Olympic. There was no direct denial of the claim.

The issue, then, is whether Ohio Farmers' actions, as evidenced by the June 2004 letter, reasonably induced Monreal Funeral Home to delay filing suit until after the limitations period had expired. That question is for the jury to decide. Accordingly, I respectfully dissent.