**MORRISON et al., Appellants,**

**v.**

**FLECK et al., Appellees.**

[Cite as *Morrison v. Fleck* (1997), 120 Ohio App.3d 307.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 96CA006491.

Decided June 11, 1997.

308

*Edward A. Heffernan* and *David A. Corrado;* and *Joseph G. Ritzler,* for appellants.

*Russel T. McLaughlin,* for appellee LaPorte Inn, Inc.

*Gregory L. Williamson,* for appellee Judy Simmerly.

QUILLIN, Judge.

Plaintiffs-appellants appeal the decision of the Court of Common Pleas, Lorain County, granting summary judgment in favor of each individual defendant-appellee. We affirm in part, reverse in part, and remand.

At approximately noon or soon thereafter, on September 14, 1992, appellee Ned Fleck, Jr., entered the premises of appellee LaPorte Inn, Inc., and consumed some alcoholic beverages. Fleck left the premises some time later and traveled to the residence of appellee Judy Simmerly, where he again consumed some alcohol. He apparently remained at the Simmerly residence until approximately 6:00 p.m., when he mounted his Harley Davidson motorcycle and departed. Very shortly thereafter, the motorcycle Fleck was operating struck and killed two-year-old Jay Scott Morrison as the child pedestrian attempted to cross the street. At 8:00 p.m., Fleck registered legally intoxicated with a concentration of .120 percent by weight of alcohol in his blood.

The victim's mother, April Morrison, as administrator of the child's estate and in her personal capacity, the victim's father, Scott Morrison, and the victim's sister, Faith Morrison, are appellants herein. In the months following the accident, April Morrison, acting in her capacity as administrator, entered into a settlement agreement with Fleck and his insurance carrier whereby she agreed to release them from further liability in return for a payment of $12,500. Appellants thereafter proceeded to file suit against LaPorte Inn, Simmerly, and Fleck for the wrongful death of Jay Scott. Each defendant-appellee filed a motion for summary judgment, and the lower court granted all three. Appellants appeal, raising three assignments of error.

Because summary judgment is involved in each of the assigned errors addressed below, we begin with a brief discussion of it. Summary judgment is a procedural device which results in the termination of litigation. *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144, 145–146. For this reason, it must be awarded with caution, and any doubts must be resolved in favor of the nonmoving party. *Id.* In reviewing a lower court's grant of summary

judgment, this court will apply the same standard the trial court is required to apply, that being whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123.

"I. The trial court erred in granting defendant Fleck's motion for summary judgment since the settlement agreement between the administratrix of decedent's estate and defendant fleck did not bar a subsequent common–law action for the recovery of funeral expenses."

On June 23, 1993, pursuant to the authority of R.C. 2125.02(C), April Morrison, as administrator of the estate of Jay Scott Morrison, entered into a settlement agreement with Fleck and his insurance carrier. This agreement stated that the latter would pay $12,500 in exchange for Morrison's execution of a full and final release from liability. That agreement stated:

"I, the undersigned [April S. Morrison, Administratrix of the Estate of Jay Scott Morrison], * * * release and discharge Ned E. Fleck, Jr., * * * from any and all past, present and future liability, claims, demands, controversies, damages, actions and causes of actions [*sic*] of every kind and nature, on account of property damage, bodily injury, wrongful death, loss of consortium and personal injury, as well as any and all other types of losses and damages of every kind and nature, past, present and future, caused by or resulting to the undersigned, as a result of an incident or accident which occurred on or about the 14th day of September, 1992 * * *."

Appellants maintain that the above release does not bar a subsequent, common-law action by the family for funeral and burial expenses. They argue that a direct, common-law action for funeral and burial expenses, filed by them in their personal capacities, constitutes a separate and distinct creature from the statutorily created wrongful death action which was settled by the administrator.

It is clear, upon a reading of the statute, that funeral and burial expenses are an element of damage that may be recovered under Ohio's wrongful death statute. R.C. 2125.02(A)(2) states, "The jury, or the court * * * may award the reasonable funeral and burial expenses incurred as a result of the wrongful death." It is also clear that, instead of pursuing a wrongful death claim all the way to trial, "[a] personal representative * * * may settle with the defendant the amount to be paid." R.C. 2125.02(C).

Appellants acknowledge that in Ohio, a wrongful death action may only be brought only by the personal representative of the decedent's estate. R.C. 2125.02(A)(1). When the representative brings this action, however, she is not acting on her own behalf or on behalf of the decedent's estate. "[T]he personal

representative is merely a nominal party and the statutory beneficiaries are the real parties in interest." *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 110, 50 O.O.2d 268, 269, 255 N.E.2d 628, 629. The administrator acts as a mere trustee on the beneficiaries' behalf, and whenever an action is properly maintained by a trustee in her representative capacity, the beneficiaries are necessarily bound by the judgment. *Gibson v. Solomon* (1939), 136 Ohio St. 101, 105–106, 16 O.O. 36, 38–39, 23 N.E.2d 996, 998–999. Therefore, because it is the statutory beneficiaries who are the real parties in interest and because the amount received as a result of the action, whether by settlement or otherwise, is to be distributed to them, *Matz v. Erie–Lackawanna Rd. Co.* (1965), 2 Ohio App.2d 136, 140, 31 O.O.2d 241, 243–244, 207 N.E.2d 250, 252–253, justice requires that they, in turn, be bound by the execution of any general release which is a condition thereof. *Burwell, supra*, 21 Ohio St.2d at 111, 50 O.O.2d at 270, 255 N.E.2d at 629–630, *Tennant v. State Farm Mut. Ins. Co.* (1991), 81 Ohio App.3d 20, 24, 610 N.E.2d 437, 439.

█ We do not hereby suggest that a common-law action for funeral and burial expenses of one wrongfully deceased may never be maintained by a surviving family member. Recovery for such damages may, however, be sought only once. It is well settled in Ohio that an injured party is entitled to only one satisfaction for an injury. *Seifert v. Burroughs* (1988), 38 Ohio St.3d 108, 110, 526 N.E.2d 813, 814–815. In this case, the statutory wrongful death remedy was pursued by the personal representative on behalf of appellants. A settlement was reached on their behalf. As a condition of that settlement, a release was executed. Appellants cannot even claim ignorance of this release, as Morrison, acting as administrator, knowingly signed it on behalf of herself and her family as beneficiaries. To allow appellants a second opportunity to pursue funeral and burial expenses would defeat the clear language of the release.

█ Appellants also argue, however, that the language of the release is not clear. They argue that the release covers liability under the wrongful death statute only, and that their common-law action should proceed because, as they correctly point out, the release contains no specific reference to funeral and burial expenses. They cite *Arnoff v. Williams* (1916), 94 Ohio St. 145, 113 N.E. 661, for the proposition that the mention of one thing implies the exclusion of another, and they cite *Smith v. Eliza Jennings Home* (1964), 176 Ohio St. 351, 27 O.O.2d 305, 199 N.E.2d 733, for the proposition that where doubt exists as to the proper construction of a contract, the language should be construed most harshly against the party who prepared it, in this case, appellee Fleck and his insurance carrier.

We do not dispute the rules appellants cite; we simply do not find them applicable in this instance. It is true that the contract does not specifically mention funeral and burial expenses. It does, however, include a release from

"any and all past, present and future liability, claims, demands, controversies, damages, actions and causes of actions [*sic* ] of every kind and nature * * * as well as any and all other types of losses and damages of every kind and nature, past, present and future" relative to the accident in issue. Such thorough language precludes us from excluding under *Arnoff* any claim not specifically and individually spelled out.

▆ As far as contract construction, the rule in *Smith* applies only when there exists doubt as to proper interpretation. *Smith, supra,* 176 Ohio St. at 355, 27 O.O.2d at 307–308, 199 N.E.2d at 735–736. We do not find the language of this contract to be in doubt. The rule of construction applicable in this case is that which gives effect to the plain intention of the parties, as determined from the agreement. *Whitt v. Hutchison* (1975), 43 Ohio St.2d 53, 58, 72 O.O.2d 30, 33, 330 N.E.2d 678, 682. We have reviewed the release in its entirety, from its title "Full and Final Release," to its repetitive attempt to include every imaginable claim that could arise out of the accident in question, to its emphasis on the waiver of those claims that would result by the signing of the contract. Given the language of the release, we find it unreasonable to believe that Ms. Morrison, signing on behalf of the beneficiaries, could possibly have intended to leave the door open for a separate, common-law action for funeral and burial expenses. Certainly this was not Fleck's intent. "If * * * the language of the release is unqualified and absolute in its terms, it may be fairly said that a presumption does arise that the injury has been fully satisfied, because the parties would not be presumed to split the redress into fractional parts." *Whitt, supra,* 43 Ohio St.2d at 59, 72 O.O.2d at 34, 330 N.E.2d at 683, quoting *Adams Express Co. v. Beckwith* (1919), 100 Ohio St. 348, 357, 126 N.E. 300, 302–303.

In *Love v. Nationwide Mut. Ins. Co.* (1995), 104 Ohio App.3d 804, 663 N.E.2d 407, an argument similar to appellants' was made. In that case, the appellants' parents were killed in an automobile accident. The administrator of the decedents' estates settled the wrongful death claims against the tortfeasor and the decedents' underinsurance carrier. Thereafter, the appellants submitted claims to their own insurers, under their underinsured motorist coverage, which were denied. On appeal, the appellants argued that they had a cause of action sounding in contract, separate and distinct from any wrongful death claim, against their own insurance companies for refusal to honor their claims. The court held, however, that "any rights appellants may have had under their policies as a result of the wrongful death of their parents terminated with the settlement of the wrongful death claims and the subsequent release of the tortfeasor." *Id.* at 810, 663 N.E.2d at 410. We find in this case as well that any claim appellants may have had against Fleck at common law terminated upon the signing of the release.

A wrongful death action is a single cause of action involving multiple elements of damages. *French v. Dwiggins* (1984), 9 Ohio St.3d 32, 35, 9 OBR 123, 126, 458 N.E.2d 827, 830–831. It would not be in the interest of justice to allow a party who had fully settled a wrongful death action, including all elements thereof, to later sue separately for elements presumably incorporated in the agreement. To release a party from liability for all further and future wrongful death claims is to release that party from all damages that could have been sought under the wrongful death statute. This includes funeral and burial expenses. Because the damages in question had previously been settled by the administrator on behalf of the beneficiaries, the lower court was correct in granting appellee Fleck's motion for summary judgment. Appellants' first assignment of error is not well taken.

"II. The trial court erred in granting defendant LaPorte Inn's motion for summary judgment since a genuine issue of material fact remains with regard to whether defendant LaPorte furnished alcohol to defendant Fleck when he was noticeably intoxicated."

"III. The trial court erred in granting defendant Simmerly's motion for summary judgment since a genuine issue of material fact remains with regard to whether defendant Simmerly furnished alcohol to Fleck when he was too intoxicated to safely operate his motorcycle."

## A. Facts

The key facts relevant to these two assignments of error are interdependent and will be discussed together.

On the afternoon of September 14, 1992, Fleck entered LaPorte Inn with a friend. Neither party seems to dispute that Fleck was not under the influence of alcohol at the time he arrived, or that during the time he spent at the LaPorte Inn, he was served by only one person, Pat Lemmeyer. In her deposition, Lemmeyer stated that she recalled Fleck coming into the bar for lunch that day and that she had served him two beers. Fleck testified he had three. Lemmeyer also testified that Fleck did not exhibit any signs of intoxication.

Although the precise timing is unclear, it is undisputed that sometime after leaving the LaPorte Inn on September 14, 1992, Fleck arrived at the home of Judy Simmerly. Fleck testified that he went straight to the Simmerly residence from the LaPorte Inn. Simmerly testified in her deposition that Fleck consumed one beer while at her residence. Fleck testified that he had two. Simmerly also stated that during the time Fleck was in her home he did not exhibit any signs of intoxication.

Soon after leaving, just down the street from the Simmerly residence, Fleck struck Jay Scott Morrison with his motorcycle. The accident report indicates

that this occurred at 6:14 p.m. At 8:00 that evening, Fleck registered a blood-alcohol level of .120 percent by weight.

In response to the motions for summary judgment filed by each individual defendant-appellee, appellants filed an affidavit from their expert witness, Larry Dehus. Given that Fleck's alcohol consumption that day was limited to the approximate hours of 12:00 or 12:30 p.m. until 6:00 p.m., Dehus opined that Fleck had to have consumed a total of approximately ten or eleven beers in that time in order to register a blood-alcohol level of .120 percent at 8:00 p.m. Appellees presented no expert to challenge Dehus's affidavit.

### B. Defendant–Appellee LaPorte Inn, Inc.

R.C. 4399.18, as it existed at the time this suit was filed, provided:

"A person has a cause of action against a permit holder or his employee for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:

"(A) The permit holder or his employee knowingly sold an intoxicating beverage to at least one of the following:

"(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

"* * *

"(B) The person's intoxication proximately caused the personal injury, death, or property damage."

R.C. 4301.22(B) states, "No permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person." Appellee LaPorte Inn holds a permit to sell alcoholic beverages.

In their complaint, appellants alleged that the LaPorte Inn was in violation of both R.C. 4399.18 and 4301.22(B) because at the time its employee, Lemmeyer, was selling alcohol to Fleck, Fleck was "noticeably an intoxicated person." They further alleged that as a direct and proximate result of Fleck's intoxication, Jay Scott Morrison was killed.

Appellants base their argument that Fleck was noticeably intoxicated on the affidavit of their expert, Dehus. As previously stated, when considering a motion for summary judgment, the court must view the evidence most favorably toward the nonmoving party. In so doing, then, in accordance with Fleck's testimony, we must assume that Fleck consumed alcohol at only two places that afternoon,

the LaPorte Inn and the Simmerly residence. We must assume Fleck's testimony to be accurate when he states he arrived at the LaPorte Inn around 12:00 or 1:00, and that he left around 2:00 or 2:30. We must also assume that he consumed only one or two beers while visiting the Simmerly residence.

Accepting Dehus's affidavit as true, as we must, under the above view of the evidence Dehus concluded that Fleck must have consumed nine to ten beers while at the LaPorte Inn. Dehus testified that if Fleck consumed this number of beers within a two-and-one-half-hour period, his blood-alcohol level would have been .190 percent. Dehus stated that an experienced bartender would have known that that amount of alcohol in that period of time, served to someone with Fleck's body type, would have resulted in his intoxication. Dehus further stated that at this level, Fleck's intoxication would have been noticeable even to a casual observer.

In granting LaPorte Inn's motion for summary judgment, the lower court discounted Dehus's affidavit by stating that it assumed that the LaPorte Inn and the Simmerly residence were the only two places where Fleck drank. The court went on to say, "The evidence before this Court is that at most, * * * [Fleck] had three beers at the LaPorte Inn * * * and that Fleck did not appear intoxicated." The ruling of the lower court ignored Fleck's testimony that the only alcohol he consumed that day was at the Inn and the Simmerly residence. Ignoring or discounting testimony that favors the nonmovant is contrary to the standard for granting summary judgment.

██ Summary judgment will not be granted where there is any genuine issue as to any material fact which remains to be litigated. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. In light of Dehus's affidavit, the number of beers Fleck consumed while at the Inn on the day in question is in dispute. This issue is key to elements of the violation alleged, which include (1) whether Lemmeyer knowingly served Fleck, (2) while he was noticeably intoxicated. Viewing the evidence most strongly in Fleck's favor, as summary judgment requires, reasonable minds could conclude that the answers to these questions are affirmative. Therefore, it was error for the lower court to grant the LaPorte Inn's motion for summary judgment.

The LaPorte Inn cites our decision in *Tillett v. Tropicana Lounge & Restaurant, Inc.* (1991), 81 Ohio App.3d 46, 610 N.E.2d 453, for the proposition that where there is no evidence suggesting that a person appeared intoxicated, evidence of the amount of alcohol consumed alone cannot withstand a motion for summary judgment. In that case the individual in question was allegedly served

fifteen beers over the course of five hours. *Id.* at 47, 610 N.E.2d at 453–454. It was argued that the jury "could therefore infer * * * that he was noticeably intoxicated." *Id.* at 49, 610 N.E.2d at 454. There was not, however, any expert testimony to support the inference. No expert testified as to the effect that that many beers over that span of time might have on a person of that particular size. The claimant in that case presented nothing to indicate the person served was "noticeably intoxicated" other than the mere assertion of the number of drinks he had supposedly consumed.

Unlike *Tillett,* there is expert testimony in this case. Based upon Dehus's calculations, in approximately two and one-half hours Lemmeyer served enough alcohol to Fleck to boost his blood-alcohol level to .190 percent. While there was testimony suggesting that Fleck did not appear intoxicated, there was also evidence from Dehus that the number of beers alone would have been sufficient for Lemmeyer, an experienced bartender, to know Fleck was intoxicated and also, at this level of intoxication, for even a casual observer to have noticed it. Therefore, the presentation of expert testimony in this case was sufficient to create a genuine issue as to whether an employee of the LaPorte Inn knowingly served alcohol to a noticeably intoxicated person, and summary judgment was improperly granted.

■ The LaPorte Inn also argues that, even if there is a genuine question as to whether Lemmeyer knowingly served alcohol to a noticeably intoxicated Fleck, appellants presented no evidence that this act proximately caused the injury to Jay Scott Morrison. It argues that the chain of proximate cause was broken by the additional alcohol Simmerly served Fleck, or inadequate supervision of Jay Scott, or simply Jay Scott's action of attempting to cross the road. It argues that appellants failed to set forth sufficient facts to demonstrate a genuine issue as to Fleck's intoxication being the proximate cause of the injury. We disagree. Appellants set forth evidence that appellee LaPorte Inn served Fleck nine or ten drinks within approximately two and one-half hours on the afternoon in question. We find this evidence sufficient to establish a genuine question of proximate cause. Even if there were other causes which contributed to Jay Scott's death, this alone would not relieve the LaPorte Inn from responsibility if the accident was partly the result of its negligence. *See Garbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E.2d 217, paragraph two of the syllabus. Also, "where reasonable minds could differ as to whose acts or omissions constitute the proximate cause of the accident, such determination is better left for the jury." *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 316, 318, 15 OBR 444, 446, 473 N.E.2d 827, 829.

Viewing the evidence most strongly in appellants' favor, as we must, we find that appellants did set forth sufficient evidence to establish a genuine question as to a material fact in this case. Summary judgment was improperly granted. Appellants' second assignment of error is well taken.

## C.  Defendant–Appellee Simmerly

Following the same logic presented above, appellants contend that summary judgment was incorrectly granted ,to appellee Judy Simmerly as well. Appellants argue, viewing the evidence most strongly in their favor, that Fleck consumed alcohol only at the LaPorte Inn and the Simmerly residence on the day in question, that Fleck consumed only two or three drinks at the LaPorte Inn, and therefore, based on the affidavit of Dehus, that he must have consumed six or seven beers while at the Simmerly residence. Appellants allege in their complaint that Simmerly "negligently, carelessly, recklessly, and knowingly gave intoxicating beverages to Defendant Fleck."

This argument does not work with Simmerly as it does for the LaPorte Inn. While the LaPorte Inn is a commercial provider of alcoholic beverages, Simmerly was merely a social host serving a guest in her home. While the LaPorte Inn could be found liable for statutory violations because it allegedly sold alcohol to a noticeably intoxicated person, Simmerly did not sell Fleck alcohol and therefore does not fall subject to the same statutes cited above.

In *Mason v. Roberts* (1973), 33 Ohio St.2d 29, 33, 62 O.O.2d 346, 348, 294 N.E.2d 884, 887–888, the Ohio Supreme Court stated that R.C. 4399.01 was not the exclusive remedy against a commercial provider of alcohol and that such a provider could be liable for injuries to other patrons where the seller knew that the purchaser's will was so impaired that it was not possible for him to refrain from drinking. Later, in *Settlemyer v. Wilmington Veterans Post No. 49* (1984), 11 Ohio St.3d 123, 11 OBR 421, 464 N.E.2d 521, the Ohio Supreme Court declined the invitation to extend that liability to a social host. The court stated that "any policy modifications which are designed to encompass the potential liability of social providers of intoxicating beverages should perhaps be deferred to the sound discretion of the legislature." *Id.* at 127, 11 OBR at 425, 464 N.E.2d at 524, While the Supreme Court did later find potential liability in a social host for injuries to a third person, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, the court made a point of distinguishing that case from *Settlemyer* by indicating that *Mitseff* involved a statutory violation (serving alcohol to a minor) while *Settlemyer* did not. *Id.* at 113–114, 526 N.E.2d at 799–801. In this case, appellants have alleged no statutory violations on the part of Simmerly. For this reason, we find that due to her status as a social host, there is no liability on the

part of appellee Simmerly and that summary judgment was properly granted. Appellants' third assignment of error is not well taken.

Appellee Simmerly also raises an argument contesting appellants' use of the affidavit of their expert, Dehus. Given our ruling on this assignment of error, however, it becomes unnecessary for us to address the issue.

In accordance with the above opinion, we affirm the trial court as to the granting of summary judgment to appellees Ned Fleck and Judy Simmerly. We reverse the summary judgment granted to appellee LaPorte Inn, Inc., and remand that claim to the lower court for further proceedings on the merits.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DICKINSON, P.J., concurs.

BAIRD, J., concurs in part and dissents in part.

BAIRD, Judge, concurring in part and dissenting in part.

The statute upon which the liability of the tavern is based provides for such liability for death caused by the negligent actions of an intoxicated person. The majority finds that evidence that the tavern sold Fleck a number of drinks is sufficient to establish a genuine question of proximate cause. Since I do not believe that such evidence provides any evidence that a negligent act of Fleck caused the death, I cannot concur in the majority's finding to that effect. I therefore dissent as to the partial reversal; I concur, however, in the balance of the majority's disposition of this case.