**In Re: BUNTING BEARINGS,**
Debtor(s).

No. 02–32578.

United States Bankruptcy Court,
N.D. Ohio.

April 22, 2005.

H. Buswell Roberts, Jr., Toledo, OH, for Debtor.

## *MEMORANDUM OPINION AND DECISION*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Motion of National City Bank to Approve a Postpetition Setoff. Bunting Bearings, LLC, having assumed the Debtor's outstanding obligations to the Movant, disputes the liability giving rise to the setoff. On National City Bank's right to setoff, the Debtor took no position. After considering the Parties' arguments made at the Hearing and by brief, the Court, for the reasons set forth herein, finds that the Motion of National City Bank has merit.

### BACKGROUND FACTS

The background giving rise to the Parties' dispute began in 1997. In that year, the Debtor was the recipient of a favorable loan arrangement, with the proceeds for the loan stemming from the sale of Industrial Revenue Bonds by the county government. As security to the bondholder(s), National City Bank ("National City") issued for the Debtor's benefit a letter-of-credit. In return, National City was given a security interest in a significant portion of the Debtor's assets. With this transaction, the Debtor and National City executed a Reimbursement Agreement, substantively setting forth that the Debtor would reimburse National City for all of its reasonable costs and expenses, including legal fees, associated with the letter-of-credit. (Reimbursement Agreement, § 13).

Subsequently, in 2002, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. During the administration of its case, Bunting Bearings ("Bunting"), a company formed for the specific purpose of consummating a sale of substantially all of the Debtor's assets under 11 U.S.C. § 363 (and hence its namesake with the Debtor), offered to purchase from the estate the bulk of the Debtor's assets. And importantly here, so as to obtain the consent of National City to the transaction, Bunting also agreed to assume the Debtor's liabilities to National City. In more specific terms, a Purchase Agreement was enacted, memorializing the terms of the sale, and set forth that Bunting was to assume the Debtor's "obligations under the Industrial Revenue Bond ... financing and the Letter of Credit issued by National City Bank with respect thereto." (Purchase Agreement, § 3.1(d)). The transaction was consummated at or around May 11, 2004, at which time Bunting posted sufficient funds to fully satisfy all of its potential liabilities on the bonds and letter-of-credit. On July 1, 2004, National City formally discharged Bunting's obligation on these liabilities, thereby contemporaneously terminating the accretion of any further fees or other charges.

Following the sale, National City filed with the Court its Motion To Approve

Setoff. In its Motion, National City acknowledged a debt owing to the Debtor—and thus by extension to Bunting—in the amount $27,994.74. This amount was derived from a refund due Bunting in the amount of $6,049.35 for one month's letter-of-credit fees paid after July 1, 2004; and $21,945.39 for the overpayment of interest on the Revenue Bonds.

Against this debt, National City seeks an offset in the amount of $36,031.16,[1] thereby leaving it a claim against Bunting in the amount $8,036.42. This charge stems primarily from legal fees it incurred on account of the Debtor's pending bankruptcy case, but also includes costs for title work and a remarketing fee. Bunting entirely disputes National City's entitlement to these fees, thus taking the position that National City holds no right of setoff.

## DISCUSSION

■ This Court is asked to determine the extent to which, if any, National City has a right of setoff against Bunting. Pursuant to 28 U.S.C. § 157(b)(2)(L), and the retention of jurisdiction articles, as set forth in both the Debtor's third amended confirmed plan of reorganization, (¶ 12.4(c)), and the Order Approving Sale of Assets Free and Clear, (¶¶ 11, S), this is a core proceeding over which this Court has the jurisdictional authority to enter final judgments and orders.

■ In general terms, setoff represents the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. *Baker v. Nat'l City Bank*, 511 F.2d 1016, 1018 (6th Cir.1975). Here, National City seeks to apply this legal doctrine so as to offset a debt it has to Bunting in the amount of $27,994.74 against a debt it

claims it is owed by Bunting in the amount of $36,031.16. As overall authority for this action, National City relies on the following relevant language of two provisions set forth in its Reimbursement Agreement with the Debtor:

> [T]he Company agrees to pay to the Bank a Commitment Fee with respect to the issuance and maintenance of the Letter of Credit from the Date of Issuance to and including the Termination Date. (...) If the Termination Date shall occur prior to the Stated Expiration Date ... the Company shall have no obligation to pay a Commitment Fee after the Termination Date. The Company shall not be entitled to a rebate of any portion of the Commitment Fee paid to the Bank. (Section 2(a)).

> To the extent permitted by law, the Company hereby indemnifies and holds harmless the Bank from and against any and all claims, damages, losses, liabilities, reasonable costs and expenses whatsoever (including reasonable attorney's fees) which the Bank may incur ... by reason of or in connection with the execution and delivery or transfer of, or payment or failure to pay under, the Letter of Credit[.] (Section 13).

In opposition to National City's right of setoff under these two provisions, Bunting raises what can be distilled down to essentially two points of opposition. First, Bunting stated in its supplemental brief to the Court: "No Letter of Credit fees should have been charged after [National City] had in its possession sufficient funds to discharge all obligations under the [Industrial Revenue] Bonds." (Doc. No. 1040, at pgs. 1–2). In other terms, Bunting argues that, after the May 11, 2004 sale of

---

**1.** On this amount, slightly different figures were presented to the Court, both as a total and after summing the individual components of the debt. This figure, however, will be used as it appears to be the most accurate and up-to-date.

the Debtor's assets and liabilities, National City improperly kept the meter running. Therefore, according to Bunting, it is due from National City an additional amount of $10,328.67, representing those fees paid for the letter-of-credit from May 11, 2004,—the date on which the National City received as a part of the sale of the Debtor's assets sufficient funds to fully satisfy the Bond and letter-of-credit obligations—to July 1, 2004,—the date on which Bunting's obligation under these liabilities was actually discharged by National City. (Doc. No. 1040, at pgs., 1–2).

Bunting's second argument against National City's right to setoff holds that those fees for which it seeks reimbursement is tantamount to a double-recovery. In Bunting's view, this situation arises because during the pendency of the Debtor's bankruptcy case, National City twice increased its letter-of-credit fees, which, under its understanding of the situation, were meant to cover those costs associated with the Debtor's bankruptcy filing, including legal fees. But now, contrary to this understanding, National City has also assessed approximately $36,000.00 in additional fees, the majority of which are to likewise cover those legal costs it incurred during the pendency of the Debtor's bankruptcy. National City, on the other hand, argues that the two charges are separate and independent, with the assessment of the letter-of-credit fees being imposed simply to compensate it for the increase in risk associated with financing a debtor in bankruptcy; not, as is the case with the other fees, to reimburse it for the actual costs associated with the Debtor's bankruptcy.

Based upon these arguments, two points are discernable: Bunting does not challenge that, under its agreement to purchase the Debtor's assets, it was required to assume the Debtor's outstanding obligations to National City. Rather, Bunting contests National City's interpretation as to the breadth of its assumed liabilities under the Reimbursement Agreement executed by the Debtor. Resolution of the issues raised by the Parties is thus necessarily one of contractual interpretation.

In matters of contractual interpretation, the primary goal is to give effect to the intent of the parties as expressed in the language of the agreement. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). No express language, however, was cited to in this matter supporting Bunting's first point of opposition: that the accumulation of fees owed to National City on the letter-of-credit should have ceased at the time of the § 363 sale of the Debtor's assets. And it is the general rule that the absence of such a provision from the Parties' contract indicates an intention to exclude it, rather than an intention to include it. *Morrison v. Fleck*, 120 Ohio App.3d 307, 312–13, 697 N.E.2d 1064 (9th Dist.1997). Still, terms may be implied into a contract. *See Id.* And in this regard, Bunting's argument necessarily hinges on the implicit assumption that once the sale of the Debtor's assets took place, the respective rights and liabilities of the Parties would be frozen in place.

For a term to be implied into a contract, its operation cannot go contrary to the express terms of the contract, and the omission must appear to be the result of sheer inadvertence or because the term was too obvious to need expression. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 714 N.E.2d 898 (1999); 17 AM. JUR.2D, *Contracts* § 369 (2004). When the Parties' Reimbursement Agreement is looked at under this standard, the application of the term 'termination date' as contained paragraph (a) of section (2) stands out as key.

Section (2)(a) of the Reimbursement Agreement, as assumed by Bunting, states that the "Company agrees to pay to [National City] a Commitment Fee with respect to the issuance and maintenance of the Letter of Credit from the Date of Issuance to and including the Termination Date." And that "[t]he Company shall not be entitled to a rebate of any portion of the Commitment Fee paid to the Bank."(Section 2(a)). In very certain terms then, this contractual language affords National City the right to allow the accrual of fees on the letter-of-credit up until the 'termination date' is triggered. But, as to a triggering mechanism for the 'termination date,' nothing in the Agreement necessarily requires (or was otherwise brought to the Court's attention) that the term's applicability would, from a timing standpoint, be directly correlated with the exact moment funds were tendered to fully satisfy the debt owed to National City. And, with an executory contract, the law does not automatically impose such a duty.[2]

■ Also added into the mix is this additional facet: When purchasing the Debtor's assets, Bunting was required to post funds with National City in an amount sufficient to cover all of the Debtor's potential liabilities, both present and future. Consequently, with its full knowledge, Bunting's deposit included fees and other charges that would accrue on the bonds and letter-of-credit beyond the actual date of the § 363 sale of the Debtor's assets; but which now, only after the sale, does Bunting deem to be inappropriate. As such, Bunting's position has an air of inconsistency, being that its objection could have been (and probably should have been) raised contemporaneously with the sale of the Debtor's assets. In this way, the doctrine of waiver cannot be overlooked—defined in the contractual context as the voluntary relinquishment of a known right or an act showing impliedly or expressly that the party agreed to rely on something other than the strict letter of its agreement. *State ex rel. Hess v. Akron*, 132 Ohio St. 305, 307, 7 N.E.2d 411, 413 (1937); *Vocke v. Third Nat'l. Bank & Trust Co.*, 28 Ohio Misc. 58, 77, 267 N.E.2d 606, 617 (1971).

For both these reasons then, the Court is simply not persuaded that Bunting's first point in opposition has merit. Consequently, as argued by National City, Bunting is not entitled to the return of those fees paid on the letter-of-credit after the sale of the Debtor's assets took place; but is instead liable for such fees up until July 1, 2004. Also, for essentially these same reasons, plus those additional ones set forth below, the Court finds that Bunting's second point of opposition cannot be sustained.

■ Bunting's second argument against National City's right to setoff holds that the $36,031.16 in legal fees it seeks to recover should be disallowed because it is tantamount to a double-recovery. According to Bunting, this condition arises because it was agreed that such costs were to be included in the additional fees already assessed for issuing the letter-of-credit—which it also notes were increased twice during the course of the Debtor's bankruptcy—and not assessed as a separate charge. Thus, in Bunting's words, "[t]he relief requested by [National City] in its Motion will result in a further windfall to [National City]." (Doc. No. 1040, at pg. 2).

---

**2.** For a complete discussion on this subject, see 28 *Williston on Contracts*, § 72:45 (4th ed.).

However, as touched upon earlier, it is the position of National City that its assessment of legal costs is not related to those fees charged for the issuance of the letter-of-credit. Rather, the purpose for its increase in the letter-of-credit fees was to compensate it for "the increased risk associated with issuing a letter-of-credit fee for the benefit of a bankrupt company." (Doc. No. 1041, Aff. of John Klee, ¶ 7). While its assessment of legal fees and other related costs was meant to indemnify it for its actual out-of-pocket expenses associated with the Debtor's bankruptcy. (Doc. No. 1041, at pg. 4). In putting forth this reading of the Reimbursement Agreement, National City points to the separate and independent nature of those sections in the Reimbursement Agreement affording it the right to assess these separate charges. That is, according to National City, those fees charged for the letter-of-credit cannot be equated, nor included with those cost assessed for legal fees (and other related costs such as the remarketing fee).

 As an initial point of reference, it is the general rule in Ohio that a litigant is not entitled to be reimbursed for their legal fees and expenses; each side must instead bear their own costs. *Krasny–Kaplan Corp. v. Flo–Tork, Inc.*, 66 Ohio St.3d 75, 77, 609 N.E.2d 152, 153–154 (1993). Certain limited exceptions, however, do exist to this rule—one of which, as is set forth in the Reimbursement Agreement, is when the parties agree contractually to allocate such fees and expenses to one party. Practically speaking then, resolution of Bunting's second point of contention is again necessarily one of contractual interpretation.

 Also lying at the foundation in matters involving contractual interpretation is the tenet that agreements "must be read as a whole" with an eye toward achieving the objective the contract was meant to secure. *Prudential Ins. Co. v. Corporate Circle,* 103 Ohio App.3d 93, 98, 658 N.E.2d 1066, 1069 (1995). Reading an agreement as a whole, in turn, requires giving, wherever possible, effect to every provision. *Id.* Consequently, unless it would lead to a result which is manifestly against the intent of the parties, different provisions of a contract are to be interpreted consistently with the other. *Expanded Metal Fireproofing Co. v. Noel Constr. Co.,* 87 Ohio St. 428, 434, 101 N.E. 348 (1913).

When put into practice, these tenets simply cannot be squared with Bunting's overall position: that National City has already been compensated for its legal costs through having assessed its letter-of-credit fees pursuant to Article 2(a) of the Reimbursement Agreement. As shown below, the Parties' Reimbursement Agreement both compartmentalizes and structurally separates the assessment of fees on the letter-of-credit versus its right to recover the legal costs it incurs in direct connection with the letter-of-credit. Interpretatively then, Bunting's position, besides rendering National City's right to recover attorney fees under Article 13 essentially superfluous, would also require that this Court read into Article 2(a) something that is not even audibly evidenced.

In the Reimbursement Agreement assumed by Bunting, National City's right to charge fees on its letter-of-credit is set forth in Section 2(a), with this section being entitled, "Commitment Fee; Amounts Payable in Respect of Drawing; Other Fees." Nowhere in section 2(a), however, is anything mentioned about legal fees. Instead, the topic of legal fees is directly handled in section 13 of the Agreement. This section, entitled aptly "Indemnification," confers upon National City the right to be indemnified for "reasonable costs and

expenses" "including reasonable attorney's fees" which it may incur in connection with the letter-of-credit. Neither of these specific sections cross-reference or otherwise make applicable the other.

■ With this structure then, all the arrows squarely point to National City having the right to assess, as separate and independent charges, fees on its letter-of-credit as well as the right to be indemnified for its legal (and other related) costs. Yet, Bunting's position is not completely confined to the four corners of the Reimbursement Agreement. Indeed, the main thrust of its position that National City's legal costs were to be subsumed into (as opposed to separated from) those fees it assessed on the letter-of-credit, centers on the existence of a subsequent oral understanding to that effect. In support thereof, Bunting submitted to the Court two affidavits from persons who were involved with the Debtor's Reimbursement Agreement. (Doc. No. 1040, Affs. of H. Roberts and T–Kwiatkowski). Conversely, National City denies the existence of any such understanding, offering its own affidavit in support. (Doc. No. 1041, Aff. of John Klee).

■ As Bunting puts forth, parties to a contract are always free to modify their original agreement. And so long as it otherwise meets the essential elements of a binding contract, an oral modification is binding even against a prior written contract. *Richland Builders, Inc. v. Thome*, 88 Ohio App. 520, 527, 100 N.E.2d 433 (1950). Still, as is often the case when parties are performing under the terms of an executory contract, communications take place between the parties concerning the details of their performance under the contract. And thereafter, when a dispute arises over the contract, such discussions are then used, as Bunting does here, as a basis to argue that a modification occurred

as to the terms of the original written contract.

■ Yet, even under the best of circumstances, witnesses to the same event often vary widely on their account of events, despite having observed the same thing. But with mutual assent forming the basis of any contractual arrangement, any claim as to the oral modification to the express and unambiguous terms of a prior written contract must be initially approached with skepticism. All the more so when the attendant circumstances or other corroborating evidence does not support the existence of any subsequent modification. In this way, Ohio law provides that parol is inadmissible to vary the terms of an unambiguous written contract, absent an allegation of fraud. *Ed Schory & Sons, Inc. v. Society Nat'l. Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074 (1996). And thus with respect to later modifications, the Ohio Supreme Court has admonished "[c]ourts [to] move slowly and carefully when the claim is made that a party has waived the terms of a written contract and agreed to different terms by parole[.]" *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198, 2 N.E.2d 501 (1936).

■ In light, therefore, of the attendant problems associated with oral modifications, the party advocating for the modification carries the burden of proving its existence. *See, e.g., Synergy Mechanical Contractors v. Kirk Williams Co.*, Ohio App., 10th Dist. Case No. 98AP–431, 1998 WL 938592, *7 (1998). In this matter, however, the only direct evidence before this Court concerning the existence of any modification as to National City's rights under the Reimbursement Agreement are the conflicting affidavits submitted by the Parties. As a practicable matter then, the evidentiary value of these competing affidavits is negated. As a result, Bunting's

burden to establish the existence of a modification as to the terms of its assumed Reimbursement Agreement is dependent upon additional corroborating evidence or other attendant circumstances which would tend to support the existence of such a subsequent agreement. But here, this burden has not been met, with the facts tending to show that no modification was ever effectuated.

First, and as already explained, Bunting's claim as to the modification of the Reimbursement Agreement was not raised until after the sale of the Debtor's assets occurred—despite Bunting apparently having access at the time of the sale to all the factual issues which it now raises in this matter. As such, Bunting's course of conduct, as the assignee of the Debtor's putative modification, does not align itself with its claim that National City had assented to its rights under the Reimbursement being modified.

Second, it cannot be ignored that the Parties' Reimbursement Agreement contained a written-modification provision, stating in relevant part: "No amendment, waiver, modification, or release of any provision . . . shall be effective, irrespective of any course of dealing . . . unless the same shall be in writing." (Section 9). And while such clauses are not always enforceable, its existence does further diminish the likelihood that National City agreed to any modification of its rights under the Reimbursement Agreement.

Finally, Bunting's overall equitable argument on this matter is not well-taken. Bunting's position here is that National City unfairly took advantage of the Debtor, and thus by extension itself, through charging higher fees based upon a risk that simply did not exist because National City's secured interest in the Debtor's assets was fully collateralized. On this position, Bunting points out that by increasing

its letter-of-credit fees, National City received a total of $77,937.68, far more than the actual cost of its legal expenses and other related costs which now total just over $36,000.00. (Doc. No., 1040, at pgs. 2–3). And on a certain level, the Court does agree with this statement: assessing additional fees against a company at a time when it is least able to assume such costs does not seem exactly fair.

█ Yet, it is not a court's job to rewrite a contract so as to alleviate a party of their bad bargain. *Northern Buckeye Educational Council Group Health Benefits Plan v. Lawson,* 103 Ohio St.3d 188, 193, 814 N.E.2d 1210 (2004). As stated by the Ohio Supreme Court:

> Cases of contractual interpretation should not be decided on the basis of what is 'just' or equitable. This concept is applicable even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may benefit from the work. Where various written documents exist, it is the court's duty to interpret their meaning, and reach a decision by using the usual tools of contractual interpretation (e.g., the written documents, the intent of the parties, and the acts of the parties) and not by a determination of what is fair, equitable, or just.

*Ervin v. Garner,* 25 Ohio St.2d 231, 239–240, 54 O.O.2d 361, 267 N.E.2d 769 (1971).

But, in this matter, nothing indicates that, by assessing additional fees and other costs, National City's was acting beyond the scope of its contractual rights; nor was Bunting under any compulsion to assume the Debtor's Reimbursement Agreement; and finally no allegations of fraud have been made. Accordingly, while Bunting may be subject to contractual conditions which, on a completely equitable basis

would not be allowed, the Court will not act to undo the terms of the bargain struck by the Parties.

For the reasons thus heretofore explained, the Court is not persuaded by those arguments raised by Bunting against National City's Motion for Setoff. Therefore, in full, National City's Motion shall be Approved. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion of National City Bank to Approve Setoff, be, and is hereby, GRANTED.