[Cite as *Weeks v. 203 Main Street, L.L.C.*, 2019-Ohio-2850.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

TIMOTHY A. WEEKS

    Appellant/Cross-Appellee

    v.

203 MAIN STREET LLC d/b/a MOSEY
INN, ET AL.

    Defendants

    and

OHIO RESTAURANT INVESTMENT OF
WELLINGTON, LLC

    Appellee/Cross-Appellant

C.A. Nos.    18CA011405, 18CA011417

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17CV193121

DECISION AND JOURNAL ENTRY

Dated: July 15, 2019

HENSAL, Judge.

**{¶1}** Timothy Weeks, administrator of the estate of Christine Weeks, has appealed a judgment of the Lorain County Court of Common Pleas that granted summary judgment to Ohio Restaurant Investment of Wellington, LLC, dba the Mosey Inn (the Inn) on his dram shop wrongful death and spoliation of evidence claims. The Inn has cross-appealed the denial of its motion for partial judgment on the pleadings. This Court affirms in part and reverses in part.

I.

**{¶2}** Between 5:00 p.m. and 5:30 p.m. on June 14, 2017, Raymond McKissick, his fiancé Natasha Orick, and Tristen Truelson arrived at the Inn to celebrate Mr. Truelson's 21st

birthday. Carrie Hilton was the bartender on duty and her sister, Jody Hilton, was managing the bar.

{¶3} Around 9:20 p.m., Mr. McKissick drove from the bar with Mr. Truelson to pick up Mr. Truelson's girlfriend. Only a couple of minutes up the road, Mr. McKissick drove left of center and collided with a vehicle being driven by Ms. Weeks, killing her. Mr. McKissick was transported to the hospital, and his blood was later shown to have a blood alcohol concentration of 0.188 grams.

{¶4} After learning of the crash, an agent from the Ohio Department of Public Safety retrieved the Inn's video surveillance unit. He reviewed the video from the night of the crash to determine if Mr. McKissick had been over-served. Concluding that there was not enough evidence to bring criminal charges, he returned the surveillance unit to the Inn. On June 29, 2017, Mr. Weeks sent a notice to the Inn to preserve evidence from the night of the crash, including "any and all video surveillance[.]" Mr. Weeks later learned that the surveillance footage had been recorded over.

{¶5} In August 2017, Mr. Weeks filed a complaint against the Inn, the company that owns the building where the Inn is located, Mr. McKissick, the owner of the vehicle Mr. McKissick was driving, and Ms. Weeks's auto insurance company, alleging three counts of wrongful death, a survival claim, a punitive damages claim, and a uninsured/underinsured motorists claim. After he learned that the surveillance footage from the night of the crash did not exist, Mr. Weeks amended his complaint to add a spoliation claim. He later dismissed the owner of the building from the action.

{¶6} The Inn moved for a partial judgment on the pleadings, arguing that punitive damages may not be recovered on a dram shop claim. The trial court denied its motion.

Following discovery, the Inn moved for summary judgment, arguing that it was entitled to judgment as a matter of law because there was no evidence that its employees knowingly served Mr. McKissick while he was noticeably intoxicated. Mr. Weeks opposed the motion, but the trial court granted it, concluding that the expert testimony he submitted did not create a genuine issue of material fact as to whether Mr. McKissick was noticeably intoxicated while he was at the Inn. The court also concluded that there was no evidence that the Inn willfully destroyed the surveillance footage from the night of the crash. Mr. Weeks has appealed, assigning three errors. The Inn has cross-appealed the denial of its motion for a partial judgment on the pleadings.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE DRAM SHOP CLAIM.

{¶7} Mr. Weeks argues that the trial court incorrectly granted summary judgment to the Inn on his dram shop claim. Under Civil Rule 56(C), summary judgment is appropriate if:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶8}** "The Ohio Dramshop Act, R.C. 4399.18, embodies [the] general, common-law rule that a person (or his representative) may not maintain a cause of action against a liquor permit holder for injury resulting from the acts of an intoxicated person." *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, ¶ 7, quoting *Klever v. Canton Sachsenheim, Inc.*, 86 Ohio St.3d 419, 421 (1999). The Act is the "sole means for imposing liability on a liquor permit holder when a third party suffers injuries caused by the permit holder's intoxicated patron." *Billi v. Moyse-Morgan Ents. Inc.*, 9th Dist. Lorain No. 12CA010260, 2013-Ohio-1214, ¶ 14, quoting *Jackson v. Walker*, 9th Dist. Summit No. 22996, 2006-Ohio-4351, ¶ 20. Under the Act, a person has a cause of action against the owner of a liquor permit holder if the permit holder or an employee of the holder "knowingly sold an intoxicating beverage to * * * [a] noticeably intoxicated person * * *" and "[t]he person's intoxication proximately caused * * * personal injury, death, or property damage." R.C. 4399.18(A)(1), (B). It applies "even if the beer or liquor was not purchased directly by the intoxicated person but was purchased by someone else and given to [him]." *Johnson* at ¶ 9.

**{¶9}** Mr. Weeks argues that there is a genuine issue as to whether Carrie Hilton knowingly sold Mr. McKissick an intoxicating beverage while he was noticeably intoxicated on the night of the collision. Although neither employee admitted noticing that Mr. McKissick was intoxicated, Mr. Weeks argues that their knowledge can be demonstrated through circumstantial evidence. *Caplinger v. Korrzan Restaurant Mgt., Inc.*, 12th Dist. Butler No. CA2011-06-099, 2011-Ohio-6020, ¶ 19 ("It is possible to use circumstantial evidence to demonstrate actual knowledge * * *."); *Sullivan v. Heritage Lounge*, 10th Dist. Franklin No. 04AP-1261, 2005-Ohio-4675, ¶ 17. As the Tenth District Court of Appeals has recognized, "[g]enerally, in practice, plaintiffs attempt to establish actual knowledge of intoxication through direct testimony

that the patron in question acted intoxicated or expert testimony that the patron would have appeared intoxicated given the amount of alcohol consumed." *Sullivan* at ¶ 17.

{¶10} In support of his argument, Mr. Weeks submitted the report of an alleged expert in the forensic toxicology of alcohol and other drugs. According to the expert's report, which was alleged to be to a reasonable degree of scientific probability, Ms. Hilton served Mr. McKissick "at least four half 14-ounce Bud Light beers and about 13 full one-ounce Jody Bombs[,]" which, in addition to the beers, worked out to a Jody Bomb every 20 minutes that McKissick was at the Inn. The expert made his calculation based on the height and weight of Mr. McKissick and the timing of the blood draw. According to employees of the Inn, a Jody Bomb is a mixed drink that contains a half-ounce of vodka and a half-ounce of whiskey. According to the expert, McKissick's blood-alcohol concentration placed him well into the "[e]xcitement" stage of alcoholic influence, during which he "would have been exhibiting signs and symptoms of alcoholic influence including decreased inhibitions, loss of critical judgment, impairment of memory and comprehension, and some emotional instability[.]" The expert also opined that those "signs of alcohol intoxication would have been noticeable and obvious to the bartender Carrie Hilton and bar manager Jody Hilton during interactions while serving him, at least, his last drink or two[.]"

{¶11} In *Morrison v. Fleck*, 120 Ohio App.3d 307 (9th Dist.1997), an intoxicated motorist struck and killed a child a few hours after leaving a bar. An expert calculated that, based on the motorist's blood-alcohol level at the time it was taken, the motorist would have had to have consumed between nine and ten beers while at the bar. According to the expert's affidavit, an experienced bartender would have known that serving that amount of alcohol to someone with the motorist's body type would result in his intoxication. He further stated that the

motorist's intoxication would have been noticeable to even a casual observer. *Id*. at 316. This Court concluded that the expert's testimony "was sufficient to create a genuine issue as to whether an employee of the [bar] knowingly served alcohol to a noticeably intoxicated person." *Id*. at 317.

{¶12} The Inn argues that the result of the blood-alcohol content test is inadmissible hearsay, noting that the administrator of the test has not been deposed. Mr. Weeks notes, however, that the result of the test is part of the certified traffic crash report, which is admissible as a public record. *See State v. Stallings*, 9th Dist. Summit No. 16437, 1994 WL 362108, *7 (July 13, 1994).

{¶13} The Inn also argues that there is no evidence that Mr. McKissick proximately caused the crash. The Inn, however, did not make this argument in its motion for summary judgment. "A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Misteff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus. Accordingly, we will not consider the Inn's argument. *See Huntington Natl. Bank v. Calvert*, 9th Dist. Summit No. 25684, 2012-Ohio-2883, ¶ 20 ("A trial court cannot grant summary judgment on grounds not raised[.]"); *Koerber v. Levey & Gruhin*, 9th Dist. Summit No. 21730, 2004-Ohio-3085, ¶ 37 ("Generally, issues that are not raised in the trial court cannot be raised for the first time on appeal.").

{¶14} The trial court discounted the expert's opinion because he did not account for any food that Mr. McKissick ate while at the Inn and did not personally observe the physical activities that Mr. McKissick engaged in at the Inn that may have had an effect on his metabolism. On summary judgment, however, the evidence must be construed in a light most favorable to Mr. Weeks. Viewing the evidence in a light most favorable to Mr. Weeks, we

conclude that the expert's report is sufficient to establish that there is a genuine question as to whether Carrie Hilton knowingly sold alcohol to Mr. McKissick while he was noticeably intoxicated. Mr. Weeks's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE SPOLIATION CLAIM.

{¶15} Mr. Weeks next argues that the trial court incorrectly granted summary judgment to the Inn on his spoliation claim. To establish a claim for spoliation of evidence, a plaintiff must establish "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]" *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29 (1993).

{¶16} The trial court indicated that it would only address the third element of the spoliation claim. The court determined that there was no evidence that the Inn willfully overwrote the surveillance video from the night of the crash to disrupt Mr. Weeks's case. Instead, the overwriting happened in the normal course of business after the surveillance unit was returned to the Inn and before the Inn received Mr. Weeks's notice to preserve evidence.

{¶17} Mr. Weeks argues that, because the Inn had reason to believe that a lawsuit would be filed against it, a jury could discredit the Inn's allegation that the video was innocently overwritten during the normal course of its business. He also argues that a jury could find the Inn's belief that the Department of Public Safety would keep a copy of the video disingenuous. According to Mr. Weeks, the department would have no reason to keep a copy of the video after it decided not to pursue a liquor violation against the Inn.

**{¶18}** In its motion for summary judgment, the Inn noted that the agent from the Department of Public Safety testified in his deposition that he obtained the Inn's surveillance system on June 15 and returned the unit to the Inn on June 16. The Inn did not present any evidence, however, about when the surveillance unit was placed back in service. We also note that there is sparse evidence about the amount of time that the unit can record before it begins overwriting prior recordings. Jody Hilton testified that she believed it rewrites after a week but conceded that it is the owner of the Inn who maintains the system. The Inn submitted a copy of the notice to preserve evidence that Mr. Weeks sent it on June 29, 2017, which asks it to preserve all evidence related to the crash, including "any and all video surveillance[.]"

**{¶19}** Viewing the evidence in a light most favorable to Mr. Weeks, we conclude that the Inn did not establish the absence of a material fact on whether the video was recorded over before the Inn received Mr. Weeks's notice. *See Cechowski v. Goodwill Industries of Akron, Ohio, Inc.*, 9th Dist. Summit No. 17944, 1997 WL 270523, * 10 (May 14, 1997). We, therefore, conclude that it did not satisfy its initial burden under Civil Rule 56(C) to establish that it was entitled to judgment as a matter of law. Mr. Weeks's second assignment of error is sustained.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON
THE PUNITIVE DAMAGES CLAIM.

**{¶20}** Mr. Weeks's final argument is that the trial court incorrectly granted summary judgment to the Inn on its punitive damages claim. He notes that the court found that the punitive damages claim failed because the Inn did not have any liability to him on his other claims. According to Mr. Weeks, if this Court reverses on his other assignments of error, it should also reverse the trial court's ruling on his claim for punitive damages.

{¶21} "Punitive damages are not an independent cause of action; rather, they arise incident to compensable harm." *Whetstone v. Binner*, 146 Ohio St.3d 395, 2016-Ohio-1006, ¶ 20. The trial court recognized that punitive damages is not a separate cause of action in its decision and concluded that Mr. Weeks's claim failed as a matter of law. Upon review of the record, we agree that, as a matter of law, Mr. Weeks's may not maintain a separate cause of action for punitive damages. *Id.* We, therefore, conclude that the trial court correctly awarded summary judgment to the Inn on his punitive damages claim.[1] Mr. Weeks's third assignment of error is overruled.

CROSS-ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED THE MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS.

{¶22} In its cross-appeal, the Inn argues that it was entitled to a judgment on the pleadings that Mr. Weeks may not recover punitive damages on his wrongful death action under the dram shop act. It notes that Section 4399.18(B) provides for "a cause of action * * * for personal injury, death, or property damage caused by the negligent actions of an intoxicated person * * *." According to the Inn, because the statute does not provide for punitive damages or attorney fees, those may not be recovered on a claim under the act.

---

[1] Just as Mr. Weeks's first assignment of error focused on his "dram shop claim" and his second assignment of error focused on his "spoliation claim[.]" Mr. Weeks's third assignment of error focuses on his "punitive damages claim." We confine our review to the judgment on Mr. Weeks's punitive damages "claim" and express no opinion regarding whether he may be able to recover punitive damages under his other causes of action. *See Crozier v. First Natl. Bank of Akron*, 9th Dist. Summit No. 10140, 1981 WL 4178, *3 (Sept. 30, 1981) (explaining that "claim" is a synonym of "cause of action"), citing *Black's Law Dictionary* 313 (4th Ed.1969).

**{¶23}** Upon review of the record, we conclude that the Inn's argument is premature. This issue may become moot if Mr. Weeks does not prevail on his claims or if the jury declines to award punitive damages and attorney fees. *See Kick v. Smithville W. Care Ctr.*, 9th Dist. Wayne No. 12CA0032, 2013-Ohio-2034, ¶ 7 (declining to consider argument on appeal that could still be decided in appellant's favor); *see also Shiloh Automotive, Inc. v. Levin*, 117 Ohio St.3d 4, 2008-Ohio-68, ¶ 50 (concluding that cross-appeal was premature because party could appeal later if it was adversely affected by application of order). The Inn's cross-assignment of error is overruled.

III.

**{¶24}** Mr. Weeks's first and second assignments of error are sustained. His third assignment of error and the Inn's cross-assignment of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

 Costs taxed equally to both parties.

_____
JENNIFER L. HENSAL
FOR THE COURT

TEODOSIO, P.J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURS IN PART AND DISSENTS IN PART.</u>

 I respectfully dissent with respect to the majority's resolution of Mr. Weeks' third assignment of error. Despite Mr. Weeks' poor word choice, it is clear that Mr. Weeks does not actually argue that there exists a separate cause of action for punitive damages. Instead, Mr. Weeks only seeks to be able to pursue punitive damages against the Inn if the Court were to reverse the decision granting summary judgment to the Inn on Mr. Weeks' claims. As I agree with the majority that it is appropriate to reverse the trial court's award of summary judgment to the Inn on Mr. Weeks' causes of action, Mr. Weeks should be free to pursue punitive damages against the Inn. To the extent the majority's opinion can be read to hold otherwise, I dissent.

<u>APPEARANCES:</u>

KATHLEEN J. ST. JOHN, JAMIE R. LEBOVITZ, and JORDAN D. LEBOVITZ, Attorneys at Law, for Appellant/Cross-Appellee.

BRIAN T. WINCHESTER and JESSE M. SCHMIDT, Attorneys at Law, for Appellee/Cross-Appellant.